**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mary Rangel RODRIGUEZ,
Defendant-Appellant.**

No. 76–4055.

United States Court of Appeals,
Fifth Circuit.

May 22, 1978.

Philip S. Greene, Gerald M. Birnberg, Houston, Tex., for defendant-appellant.

J. A. Canales, U. S. Atty., Mary L. Sinderson, George A. Kelt, Jr., James R. Gough, Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before GOLDBERG and MORGAN, Circuit Judges, and WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge:

Following the government's petition for rehearing, we herewith withdraw our opinion of December 22, 1977, vacate our judgment, and substitute this opinion and judgment.

Mary Rangel Rodriguez appeals from her convictions on both counts of a two-count indictment. In count one she was charged with conspiracy to distribute heroin, in violation of United States Code 21 § 846, and in count two with possession of heroin with intent to distribute, in violation of United States Code 21 § 841(a)(1).

She seeks to have her convictions reversed both because the trial court, over her objection, replaced an original juror with an alternate juror without ascertaining the reason for the original juror's non-attendance and because the trial court refused appellant's motions for a new trial based upon an improper question by the prosecutor.

We shall first state the facts about, and our conclusions with respect to, the replacement of one of the original jurors.

The trial of Rodriguez began on Thursday, September 16, 1976. At approximately five p. m. on Friday afternoon, September 17, 1976 the judge excused the jury for the weekend and directed it to return to the courtroom at two p. m. Monday afternoon, September 20, 1976. Monday morning, it seems, but is not clearly proven, that one of

---

* Senior District Judge for the District of Massachusetts, sitting by designation.

the jurors, a Mr. Maxey, called the clerk to say that he had chosen to go to work that day rather than to come to court. The court, either because he had this information or because he observed that Maxey was absent, and without making any further inquiry proposed to replace Maxey with an alternate. Defense counsel strenuously objected to this procedure and insisted that the court issue a bench warrant for Maxey or that the court at least allow defense counsel to develop for the record the facts surrounding the juror's absence. Defense counsel was particularly concerned because the absent juror was a Black man whom the Hispanic defendant thought might be more sympathetic to her than a replacement.

The court overruled the objection. It did not make any effort to reach by telephone, by bench warrant, or otherwise the absent juror. Without first formally discharging the absent juror, the court substituted for Maxey an alternate who turned out to be a White, Anglo-Saxon Protestant.

■ The settled rule in this and other circuits is that "the trial judge, in his *sound discretion,* may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *United States v. Smith,* 550 F.2d 277, 285 (5th Cir. 1977), quoting *United States v. Cameron,* 464 F.2d 333, 335 (3rd Cir. 1972). Acc. *United States v. Brown,* 555 F.2d 407, 425–426 (5th Cir. 1977); *United States v. Jones,* 534 F.2d 1344, 1346 (9th Cir. 1976); *United States v. Domenech,* 476 F.2d 1229, 1232 (2nd Cir. 1973); *United States v. Ellenbogen,* 365 F.2d 982, 989 (2nd Cir. 1966); *United States v. Zambito,* 315 F.2d 266, 269 (4th Cir. 1963).

It has been said that "that trial court's exercise of this discretion is not to be disturbed absent a showing of bias or prejudice to the defendant," (*United States v. Smith, supra*) or to any other party. *United States v. Ellenbagen, supra.* Presumably as here used "prejudice" would include discharge of a juror for want of any factual support, or for a legally irrelevant reason. There must be some "sound" basis upon which the trial judge exercised his discretion.

■ A juror's absence is an observable fact. His absence manifestly interferes with the prompt trial of a case. Hence when a juror is absent from court for a period sufficiently long to interfere with the reasonable dispatch of business there may be a "sound" basis for his dismissal. *United States v. Domenech, supra.* In *Domenech* the trial judge was sustained in having discharged a juror who did not appear within 10 minutes of the opening of court on the day on which the judge was to give the charge. The trial judge was left undisturbed in his determination that the delay caused by the juror's absence outweighed other factors. The judge was not reversed because he failed to make inquiries as to the cause of the juror's absence, nor because of the judge's failure to try to reach the juror by telephone or *capias,* nor because the judge failed to hold a hearing or make a formal finding.

■ This is nothing contrary to *Domenech* in Fed.R.Crim.P. 24(c). And it is indeed implied that no finding is required when a juror manifestly *becomes* unable to perform his duties, for the rule expressly contemplates that possibility.

> "alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties."

We have not overlooked the facts that in the case at bar defendant was an American of Hispanic ancestry, that the replaced juror was Black, and that the alternate juror who replaced him was a White of Anglo-Saxon ancestry. If, which is, of course, not provable, the replacement adversely affect-

ed defendant it was not the kind of prejudice which justifies our reversal of the trial judge's discretion. Every replacement involves a change in the jury's composition. How much weight should be given to this factor is a matter for the sound discretion of the trial judge.

■ Appellant's other point is that her convictions should be reversed because the District Court failed to grant her motions for a new trial when the prosecutor on cross-examination put an improper question to her.

With respect to that point these are the facts.

On direct examination, appellant stated that she lived at 9505 Avenue K with her husband. On cross-examination, the prosecutor put as his first question:

"Miss Rodriguez, let's see, you are thirty-nine years of age, live at 9505 Avenue K, in the rear, with your husband. Now, isn't it a fact that your husband is now serving 65 years at the Texas Department of Corrections and that—"

Defense counsel immediately objected to that question and moved for a mistrial. After the question was read back by the court reporter, in the presence of the jury, the trial court sustained the objection, and instructed the jury to disregard the question, but denied the request for a mistrial. At that point defense counsel stated that appellant's husband was in the courtroom, and requested permission to introduce evidence to support the motion for mistrial. But the judge said that he would take the evidence only after the jury was excused.

The next day, after the judge had charged the jury, and it had retired to consider its verdict, the prosecutor informed the court that earlier that morning he had learned that: (1) The 65-year sentence imposed upon Richard Rodriguez, defendant's husband, had been reversed; and (2) later a 5-year sentence was imposed upon Richard Rodriguez, but that he had been released from custody in September of 1976 a few days before the time of Mary Rodriguez's trial. Defense counsel again moved for a mistrial. The trial court denied the motion.

Appellant contends that the prosecutor's first question on cross-examination was improper because (1) it alleged as a fact that appellant's husband was in custody under a 65-year sentence, when in fact he was in the courtroom, (2) it was an unjustified attack upon the credibility of appellant who had testified that she was living with him, (3) the District Court's direction to the jury to disregard the question was ineffective, and (4) the stricken question was prejudicial.

We have no doubt that the prosecutor's question was grossly improper. It stated as a fact, when it was not, that at the time of trial the husband of appellant was in prison. But the question did not relate to a central issue in the case, nor to appellant's credibility on such an issue. Moreover, the trial judge directed the jury not to consider the question. Our reading of the record as a whole persuades us that the unanswered question played no influential part in the four-day trial where the appellant's credibility was tested in many more important and more memorable ways, such as her repudiation of her pre-trial statements.

■ In this circuit the rule is well-settled, in accordance with *Kotteakos v. United States*, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557, that when an error is not of constitutional magnitude, it is not a ground for reversal if the error had no substantial influence and there was enough to support the result apart from the phase affected by the error. *United States v. Rubin*, 559 F.2d 975, 985 (5th Cir. 1977); *United States v. Constant*, 501 F.2d 1284, 1289 (5th Cir., 1974).

■ We shall briefly state the more important items of evidence which support the resulting convictions.

On June 30, 1975 Drug Enforcement Special Agent Larry Carwell gave Dorothy Sutton $850 to purchase an ounce of heroin, and to telephone him where to pick it up. Dorothy Sutton went to 2620 Sabine Street, then went to an outside telephone to place a call, and thereafter drove to 7165 Dillon Street, the home of Guadalupe Navarro and Jesse Aldaco. After being there 20 minutes she telephoned Carwell to pick up the drugs at the Globe Store.

Carwell sent government agents to pick up Dorothy Sutton. They saw her leaving the Globe Store and driving in the direction of Dillon Street. They found she had no drugs, but she told them that she had given the money to Mexicans who were to deliver the heroin, and that she was returning to the Mexicans' house to clear the matter up.

Other agents observed appellant Rodriguez and a man named Aldaco leave 7165 Dillon Street and drive to a service station at 6400 Telephone Road. Appellant went into a restroom for 10 seconds. Appellant and Aldaco went to an apartment near the Globe Store where she remained for five minutes. As she and two of her children walked toward the Globe Store, she was arrested.

After appropriate *Miranda* warnings appellant told the officers that she had heroin in her purse, and that she was doing Aldaco a favor by picking it up at the restroom at 6400 Telephone Road and delivering it to him at the Globe Store.

After being again informed of her legal rights, she waived them in writing, and made a statement, which the agents reduced to writing, and which she signed. The significant parts of that statement were that (1) she had for several years known that Aldaco and Navarro were heroin dealers, (2) she observed a girl named Dorothy come to the Dillon Street house and heard her say that she needed "something", (3) Navarro told appellant that Dorothy had given him money, (4) Aldaco asked appellant to do him the favor of driving with him to 6400 Telephone Road, (5) when they got there appellant went to the ladies' restroom and picked up 2 ounces of heroin wrapped in newspaper, and (6) that Aldaco told appellant to keep the heroin and to take it to him at the Globe Store in 30 minutes. Appellant produced the two ounces of heroin she had in her purse.

Although at her trial appellant recanted her statement, the statement itself was sufficient substantial evidence to support convictions both of the substantive offense of possession of heroin and of the conspiracy charge.

*Judgment affirmed.*

GOLDBERG, Circuit Judge, dissenting:

With deference to Judge WYZANSKI's change of heart, I continue to find his original opinion, reported at 564 F.2d 1189, persuasive on the substitution of juror issue. I agree that the decision to remove and replace a juror *unable* to perform his duty is one committed to the sound discretion of the trial judge. I simply believe that on the facts of this case, in which the trial judge denied strenuous efforts by the defense to develop a record, there was no basis for the exercise of the court's discretion. I cannot agree that the unexcused and possibly easy to remedy temporary absence of a juror provides a sufficient basis for that juror to be replaced, particularly when the defendant objects in strenuous and timely fashion.

Confident that further expostulation with my distinguished brethren would yield no productive result, I merely restate my abiding belief that Judge WYZANSKI correctly expounded the law in his first opinion.