**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Peter BLAKE, aka David Clark and Winston Wilson, Defendant–Appellant.**

**No. 90–1829.**

United States Court of Appeals, Fifth Circuit.

Aug. 28, 1991.

Rehearing Denied Oct. 10, 1991.

John D. Nation, Dallas, Tex., for defendant-appellant.

Susan Greenberg, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, GOLDBERG and GARWOOD, Circuit Judges.

CLARK, Chief Judge:

Peter Blake was convicted and sentenced under a seven-count indictment charging various weapons and narcotics offenses. He raises challenges to the indictment, to portions of the evidence admitted against him at trial, and to the sufficiency of the evidence on several counts. We affirm.

I

In March 1989, Blake purchased two semiautomatic pistols from a dealer at a trade show in Dallas. He completed the transaction forms using the alias of Winston Wilson.

In early April 1990, Dallas police officers observed Blake during a "reverse" drug transaction. An officer conducting undercover negotiations offered to sell two kilos of cocaine to Blake and another individual. Blake stood close by and observed the officer exchange the cocaine for $52,000. An arrest signal was given, and Blake's companion was apprehended. Blake escaped in a Nissan 300ZX. While not charged in the indictment, this drug sale was described to the jury in the government's rebuttal case.

Blake was arrested on April 12, 1990, after coming under police surveillance based on a warrant for his arrest regarding the firearms purchase under the alias of Winston Wilson. This surveillance culminated in a car chase, which ended in a wreck of the Nissan 300ZX in which Blake was a passenger.

At trial the government elicited testimony that, after his arrest, Blake spoke freely while in custody to law enforcement officers, confessing to a variety of criminal activities which included the conduct subsequently charged in the indictment. Blake denied these statements at trial, along with any other knowledge of criminal trafficking in narcotics. Blake did sign consents to search the wrecked car and two apartments. Officers testified that he told them where the key to one of the apartments could be found. They also testified that he described a hiding place under a kitchen baseboard where he had stashed crack cocaine, a gun, and money, and informed them of a cache of weapons and ammunition in a pillowcase in the bedroom.

The officers found an automatic submachine gun, 161 grams of crack cocaine, and $6,000 in cash hidden behind the baseboard. A pillowcase in the bedroom contained four 9mm pistols and ammunition. They also discovered razors, plastic baggies, and a set of scales. In the car, the officers found two loaded guns, one in a bag under the passenger floorboard and the other in the driver's purse.

Blake was indicted on seven counts. Count 1 charged use of false identification in the acquisition of firearms, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1).

Counts 2 and 7 charged possession of firearms by an illegal alien, in violation of 18 U.S.C. §§ 922(g)(5) and 924(a)(2). Count 2 concerned Blake's purchase in March 1989 of the two semiautomatic pistols. Count 7 concerned the submachine gun and four 9mm pistols seized in the apartment after his arrest. Count 3 charged possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Count 4 charged unlawfully receiving and possessing an unregistered firearm—the submachine gun hidden under the baseboard—in violation of 26 U.S.C. §§ 5861(d) and 5871. Counts 5 and 6 charged use of firearms during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Count 5 concerned the submachine gun found with the cocaine hidden under the baseboard. Count 6 concerned the four 9mm pistols found in the pillowcase in the bedroom.

A jury convicted him on all counts. The trial court imposed a total term of imprisonment of 50 years and 8 months. The district court also imposed a supervised release term of five years and made a special assessment of $350. Blake filed this timely appeal.

## II

Blake argues that the indictment improperly joined two groups of offenses. He also raises several evidentiary issues from the district court's conduct of his trial. Finally, he challenges the sufficiency of the evidence against him on several of the counts.

### A. Joinder of Offenses

Blake argues that the indictment charged two groups of offenses. Counts 1 and 2 concern his unlawful possession and acquisition of firearms in March 1989. The remaining counts all concern the events surrounding his arrest on April 12, 1990. The district court denied Blake's motion for severance of these two groups of offenses. Misjoinder is a question of law we review *de novo. United States v. Park,* 531 F.2d 754, 760 (5th Cir.1976).

■ The district court did not err. Rule 8 of the Federal Rules of Criminal Procedure is broadly construed in favor of initial joinder. *United States v. Scott*, 659 F.2d 585, 589 (5th Cir.1981), *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 105 (1982). Rule 8(a) allows joinder of offenses if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." FED.R.CRIM.P. 8(a). Both groupings of offenses contain the identical charge of unlawful possession of firearms by an illegal alien. Joinder was permissible under Rule 8(a). Blake does not allege any prejudice—much less substantial prejudice—flowing from the district court's discretionary decision denying severance of these counts. *See Scott*, 659 F.2d at 589. Accordingly, the district court's ruling allowing these counts to proceed to trial under a single indictment was not error.

### B. Evidentiary Issues

#### 1. Extrinsic evidence of a prior act of misconduct

In its case-in-chief the government elicited testimony from three Dallas police officers that Blake had admitted involvement in the crimes charged and in other criminal activity. On direct and cross-examination, Blake denied making any incriminating statements to the police officers. On rebuttal, the government called a detective of the Dallas Police Department to testify, over Blake's objection, about Blake's presence at the "reverse" purchase operation detailed in the facts above.

Blake contends this was improper impeachment, citing Rule 608(b) of the Federal Rules of Evidence. This rule provides:

**(b) Specific instances of conduct.**—Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be in-

quired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

FED.R.EVID. 608(b).

■ Under Rule 608(b) it is error to attack a witness' general character for truthfulness by using extrinsic evidence of his conduct that has not resulted in conviction of a crime. *United States v. Cohen*, 631 F.2d 1223, 1226 (5th Cir.1980). We have, however, held that "Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case." *United States v. Opager*, 589 F.2d 799, 803 (5th Cir.1979).

■ Blake's admissions, in which he indicated that he had been extensively involved in drug trafficking, was a primary part of the government's case-in-chief. As such, the admission that he was in the drug business was clearly a material issue in the case. When Blake denied making the incriminating statements to the police officers on direct, he called into question the veracity of the officers' testimony about the confession. The government was entitled to present evidence about Blake's prior involvement with drugs to corroborate the testimony about Blake's confession. Evidence of other drug transactions corroborates Blake's admissions about drug trafficking. That Blake was a drug trafficker tends to show that the guns and cocaine found secreted in his girlfriend's apartment were part of his drug business. We follow the recent decision in *United States v. Cardenas*, 895 F.2d 1338, 1345–46 (11th Cir.1990). Under indistinguishable facts, that court stated:

We do not believe that Rule 608(b) operates to exclude testimony such as this. Material relevant evidence, such as that presented by the government, which contradicts other material evidence does not tend to focus the jury's attention on an unrelated collateral matter, so as to con-

fuse the jury and needlessly expend valuable time. Rather, such evidence aids the jury in determining whether a defendant actually and intentionally involved himself in the charged misconduct; its impeachment effect is merely ancillary. *Id.* at 1346; *see also United States v. Cousins,* 842 F.2d 1245, 1248–50 (11th Cir.), *cert. denied,* 488 U.S. 853, 109 S.Ct. 139, 102 L.Ed.2d 111 (1988). The Ninth Circuit has likewise concluded that "[i]ndividual rules of evidence, in this instance Rule 608(b), should not be read in isolation, when to do so destroys the purpose of ascertaining the truth. This is especially so when a witness directly contradicts the relevant evidence which Rule 608(b) seeks to exclude." *United States v. Batts,* 558 F.2d 513, 517 (9th Cir.1977), *opinion withdrawn and aff'd on other grounds,* 573 F.2d 599, *cert. denied,* 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978).[1] The evidence was admissible under Rule 608(b).

▇▇▇▇ Furthermore, where the admission of evidence is proper on any ground, the district court's reliance on other grounds does not affect the defendant's substantial rights. *Cardenas,* 895 F.2d at 1345; *Collins v. Seaboard Coastline Railroad Co.,* 681 F.2d 1333, 1335 (5th Cir. 1982). Rule 404(b) plainly provides an appropriate basis for admission. This rule generally bars evidence of other crimes, wrongs or acts to prove the character of a defendant and conduct in conformity therewith, unless it tends to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." FED.R.EVID. 404(b). Under this rule we have held that evidence of "other crimes" is admissible if it is relevant to an issue other than the defendant's character, and the probative value of the evidence is not substantially outweighed by its prejudicial effect. *United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc),

*cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). By his direct testimony and denials on cross-examination, Blake squarely placed at issue his knowledge and intent regarding narcotics trafficking. "By admitting the rebuttal evidence, the trial court merely completed the picture as to appellant's true involvement and knowledge in the drug world and thereby corrected a distorted view of appellant's testimony." *Batts,* 558 F.2d at 518.

## 2. Impeachment

▇▇ On cross-examination, Blake asserted that he had never possessed crack cocaine, that he never made any statements to the police regarding contraband they would find in the apartment and car, and that any testimony by the officers to the contrary was a lie. In the government's attempt to impeach this testimony, the following colloquy took place:

Q. Mr. Blake, have you ever killed anybody?

MR. GLOVER: Your Honor, we would object to that as being highly—

THE COURT: I sustain that.

MR. WEBSTER: Your Honor, could we approach the bench?

THE COURT: Yes, sir.

(Bench conference on the record.)

MR. WEBSTER: Your Honor, this is part of the statement that we did not get into on direct examination with regard to him killing ten people, two of which were police officers in Jamaica.

THE COURT: Well, does he have a statement to you to that effect?

MR. WEBSTER: He has a statement to two agents to Agent Barber to that effect that we did not get into on cross-examination because we felt—

THE COURT: You mean on direct?

MR. WEBSTER: Yes, sir, on good faith basis and all three of those individuals were willing to come up to this and

---

1. The original decision in *Batts* relied primarily on Rule 608(b), speaking only briefly to the support lent by Rule 404(b). This decision was subsequently withdrawn, and an opinion substituted which rested exclusively on Rule 404(b). In *Opager,* this court quoted and adopted a large portion of the original *Batts*

reasoning, *Opager,* 589 F.2d at 799, without noting the subsequent history. Having found the original *Batts* decision to be persuasive, we do not reconsider its language. In any event, the *Batts* decisions are complementary, and sustain affirmance here on either basis.

state there were at least ten people in Jamaica were killed by Blake.

THE COURT: What about that?

MR. GLOVER: I assume he is going to deny it but that is pretty bizarre.

MR. WEBSTER: Bizarre is common place in this case.

MR. GLOVER: If he has denied that he did it he has denied all this other.

THE COURT: I understand. I think it is overdoing it myself but I think the question is allowable.

MR. GLOVER: Okay.

THE COURT: I will take it on your representation that you have those statements to support it.

(End of bench conference on the record.)

THE COURT: Okay, Mr. Webster.

Q. (By Mr. Webster) Mr. Blake, did you ever kill anybody before you left Jamaica?

A. No, sir.

Q. At any time did you ever tell Agent Scott Pickett in the presence of Special Agent Blake Boteler or Investigator Terry Barber that you killed at least ten people in Jamaica?

A. No, sir.

No government witness was called to rebut this testimony. No further mention was made of this matter by the government. During closing arguments, Blake's counsel twice referred briefly to this line of questioning. He commented that the government's assertion that Blake made these statements was "ludicrous." He also pointed out the "prejudicial" nature of the statements, as well as the unreliability stemming from the officers' decision not to videotape, to record, or to transcribe for signature these conversations.

Blake argues that the questions were entirely collateral to the substantive issues of the charged offenses, and that any probative value of this testimony on the issue of his credibility was substantially outweighed by the danger of unfair prejudice arising from the substantive implications of the questions. *See* FED.R.EVID. 403. The government responds that Blake's credibility was at issue, particularly regarding the scope of his conversations with those

agents. *See United States v. Contreras,* 602 F.2d 1237, 1242 (5th Cir.), *cert. denied,* 444 U.S. 971, 100 S.Ct. 466, 62 L.Ed.2d 387 (1979).

Blake's credibility was placed at issue when he chose to testify. When testing that credibility, however, the government cannot simply set up *any* extraneous straw man it wishes to knock down. Conceding, *arguendo,* that these questions were relevant to the issue of Blake's credibility, "a trial judge's analysis of admissibility only begins with the decision that proffered evidence is relevant. He must yet weigh its marginal contribution against potential prejudice and confusion, keeping in mind that the judge remains the jury's source of information regarding the law." *United States v. Burton,* 737 F.2d 439, 443 (5th Cir.1984). On appeal, the Rule 403 balance to be struck by the district court will not be overturned absent an abuse of the trial judge's broad discretion in this area. *Id; United States v. Thevis,* 665 F.2d 616, 634 (5th Cir.), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). Rule 403 is an "extraordinary measure" because it permits exclusion of relevant evidence. *United States v. Caldwell,* 820 F.2d 1395, 1404 (5th Cir.1987). Thus, when reviewing the district court's exercise of discretion we view the evidence in the light most favorable to the proponent, maximizing its probative value and minimizing its prejudicial effect. *Id.*

Admitting this evidence was error. The substance of the question was unfairly prejudicial: apart from the self-generated credibility test, it was entirely unrelated to any substantive issue before the jury. From its agents' conversations with Blake and through its investigation, the government had obtained abundant evidence which it could use to impeach his credibility. The probative value of this cumulative impeachment was *de minimis.* Moreover, after asking the inflammatory question and receiving the anticipated negative response, the government chose not to call rebuttal witnesses to contradict this testimony. Neither did it attempt to argue this discrep-

ancy in closing to emphasize Blake's lack of credibility. Instead, the prosecution threw the damning questions into the jury box without the follow-up it led the court to believe would be forthcoming from its agents. The "major function" of Rule 403 is "to exclud[e] matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 128, 62 L.Ed.2d 83 (1979). The government's conduct leaves the district court's ruling a clear abuse of discretion.

Finding error, however, the question then arises whether this error was harmless. *United States v. Rodriguez*, 573 F.2d 330, 333 (5th Cir.1978). "[W]hen an error is not of constitutional magnitude, it is not a ground for reversal if the error had no substantial influence and there was enough to support the result apart from the phase affected by the error." *Id.*

Blake's defense required the jury to determine whether he or the officers were lying. By admitting the following, Blake's own testimony assured the jury's determination that he was not a credible, reliable witness. He routinely used several aliases, supplying false names and other misinformation to enter the United States illegally and to obtain driver's licenses unlawfully. He asserted he and the female driver of the car were "casual friends." Yet he fathered her child, while professing to still love his wife and children he left in New York. He stated that he never lived at the female's apartment, and that the contraband found there was not his. But, he admitted that the picture of his family found there was his. He explained this by testifying he had taken the picture to show his brother, who was visiting him from Jamaica but who had stayed at her apartment. He also testified that he had no knowledge of guns, although he did admit to purchasing the two semiautomatic pistols for two men, one whose name he did not know, and the other he knew only as "John." He testified that, when purchasing the weapons, he did not see the statement on the form which he signed regarding prosecution for false answers. He then testified on cross-examination that he thought it permissible to use a false name, to declare a false birthplace, and to deny being an illegal alien when making this purchase. He told the jury he did not even like guns, yet his leather jacket bore the name "Bullet." He then claimed this was not his nickname, and he did not know why or when it was stenciled on the back of his jacket. He explained the $1000 in cash on his person when arrested by stating he had just been paid for finishing the body work on a car, although he could not remember who owned the car, the make of the car, or the location of where he had done the work. The gold chain with a Krugerrand medallion he was wearing when arrested was borrowed from a friend, but he did not know its value, nor did he identify the friend.

On every substantial point, Blake's testimony was contradicted by that of the officers. The description of the narcotics transaction presented by the government on rebuttal concluded with testimony of his escape in a Nissan 300ZX. The car in which he was a passenger when apprehended several days later was also a Nissan 300ZX. He claimed it was his first and only ride in the car. He testified that he saw only a plainclothes officer holding a gun and tapping on his window prior to the chase, but never saw or heard the uniformed officer in the squad car the officers testified was behind him flashing its lights and sounding its siren. The officers' testimony presented in the government's case-in-chief consistently recounted his statements that the contraband was his, along with his directions to the secret places in which it was concealed. All were proved to be accurate.

The record contains more of the same, but the above is more than sufficient to establish that any reasonable juror would have to conclude Blake was not credible. The substantive evidence against Blake was also overwhelming. The two erroneously admitted questions about killings were prejudicial. But in the context of this trial, they clearly did not harm any substantial right of the defendant.

### 3. Irrelevant, prejudicial testimony

■ On rebuttal, Detective Hoskins testified: "I am a detective assigned to the Narcotics Division of the Organized Crime Drug Enforcement Task Force, Jamaican Task Force here in the Federal Building." Because he is Jamaican, Blake objected that this last reference was irrelevant and prejudicial. At bench conference, the district court agreed, and asked whether Blake's counsel wished an instruction to disregard. No such request was made. The government stated that it was surprised by this reference, which the witness voluntarily stated without prompting. Blake did not challenge this assertion. The district court concluded the matter by having counsel instruct the witness out of the jury's presence never to refer to Jamaica again.

Blake requested neither a curative instruction nor a mistrial. He argues here that this testimony was so prejudicial that he had no duty to make such a motion. He also urges that no instruction to disregard could have cured the harm. We disagree. Even if considered inappropriate, Blake complains about the one word—"Jamaican"—spoken once in over two days of witness testimony. Without a request for a curative instruction or a mistrial, the appellate test is for plain error—error that is "so fundamental as to have resulted in a miscarriage of justice." *United States v. Yamin*, 868 F.2d 130, 132 (5th Cir.), *cert. denied*, 492 U.S. 924, 109 S.Ct. 3258, 106 L.Ed.2d 603 (1989). No plain error occurred here.

### C. Sufficiency of the Evidence

■ Blake asserts that the evidence regarding counts 3, 5 and 6 is insufficient to support conviction. Count 3 charged possession of cocaine with intent to distribute. Counts 5 and 6 charged use of a firearm during and in relation to a drug trafficking offense. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices drawn in support of the jury's verdict. So long as a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the conviction will stand. *United States v. Cordova–Larios*, 907 F.2d 40, 41 (5th Cir.1990).

■ Count 3 required the government to prove that Blake (1) knowingly (2) possessed a controlled substance (3) with the intent to distribute it. *United States v. Villasenor*, 894 F.2d 1422, 1426 (5th Cir. 1990). Blake argues that the evidence was insufficient to link him to possession of the controlled substance, and that the amount was insufficient to raise an inference of intent to distribute. The jury heard testimony that Blake had confessed to ownership of the narcotics, directed agents to a keyring containing the key to the apartment, and disclosed the hidden compartment containing the narcotics. Other testimony established that the 161 grams of crack cocaine seized was a commercial quantity yielding approximately 2,000 individual doses. With the cocaine was found $6,000 in cash, razor blades, plastic baggies, and a set of scales. Taken together, the jury could reasonably infer that Blake committed the charged offense.

■ Blake argues that the weapons covered by counts 5 and 6 were never linked to him. Because the weapons were found with the narcotics, these weapons were sufficiently linked to him by the same credibility assessments set out above.

■ Blake also argues that 18 U.S.C. § 924(c)(1) requires that the weapons be used during and in relation to a drug trafficking crime. He argues the government did no more than prove the proximity of a controlled substance and the named weapons. Blake recognizes that the government need not prove actual use or brandishing of the weapon. *United States v. Coburn*, 876 F.2d 372, 375 (5th Cir.1989). The government may meet its burden by showing that the weapon involved could have been used to protect, facilitate, or have the potential of facilitating the operation, and the presence of the weapon was in some way connected with the drug trafficking. *United States v. Robinson*, 857 F.2d

1006, 1010 (5th Cir.1988). In *Robinson,* we followed *United States v. Matra,* 841 F.2d 837 (8th Cir.1988), which found it sufficient that "police had found loaded weapons, ammunition, a large quantity of cocaine and cash, and drug paraphernalia in a house *used* by [defendant] *and others.* Two of the weapons were found underneath sofa cushions, one underneath the bedcovers, and another in the zipper bag of a vacuum cleaner." *Robinson,* 857 F.2d at 1010 (emphasis added). Blake's case is indistinguishable. The jury could find that Blake admitted to owning the weapons and narcotics and to having been in the apartment, and that he directed the police to the apartment's key and to the various weapons secreted adjacent to the narcotics. The evidence was more than sufficient to support conviction on counts 5 and 6.

### III

The judgment of the district court is

AFFIRMED.

GOLDBERG, Circuit Judge, dissenting:

Relying on a 2–1 decision by the Eleventh Circuit and a 2–1 decision by the Ninth Circuit which was subsequently withdrawn in relevant part, the majority holds that the government properly impeached the defendant's credibility with rebuttal evidence of his alleged participation in an unrelated, uncharged drug transaction. Because I am persuaded by the reasoning of the dissenting opinions in those two cases, and believe that other precedent prohibits the admission of extrinsic evidence on a collateral matter, I cannot join in Part II–B–1 of the majority opinion.

### I.

I subscribe to the view that rule 608(b) means what it says: that "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may *not* be proved by extrinsic evidence. Fed.R.Evid.

608(b) (emphasis added). The language of the rule is quite plain; extrinsic evidence is *in* admissible when offered to impeach or bolster a witness' credibility.

The majority correctly observes that we have held that "Rule 608(b) should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves, a witness's testimony *as to a material issue of the case."* Majority op. at 338 (quoting *United States v. Opager,* 589 F.2d 799, 803 (5th Cir.1979) (emphasis added). Under *Opager*'s "specific contradiction" rule, a contradiction as to a material issue allows for the admission of extrinsic evidence, not for the purpose of impeaching the witness' testimony (i.e. undermining his credibility), but for the purpose of proving the truth of the contradicted, *material* fact. *United States v. DiMatteo,* 716 F.2d 1361, 1366 (11th Cir.1983) (citing *Opager*), *vacated on other grounds,* 469 U.S. 1101, 105 S.Ct. 769, 83 L.Ed.2d 767 (1985). Of course, the contradiction of fact itself does not make the issue material; the issue is either material or collateral, independent of the contradiction. As the D.C. Circuit has observed: "[t]he commonly used test of collaterality asks: 'Could the fact, as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?'" *United States v. Tarantino,* 846 F.2d 1384, 1410 (D.C.Cir.) (quoting 3A Wigmore, Evidence Sec. 1003 (Chadbourn Rev.1970)), *cert. denied,* 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83 (1988). Under this test, which I believe captures the essence of the materiality inquiry, Blake's participation in the unrelated, uncharged "reverse purchase" transaction was plainly a collateral matter.

Blake's defense at trial was that he did not reside in the apartment where the contraband was discovered—that the apartment belonged to his ex-girlfriend, and that the contraband discovered there was not his. When he testified on direct-examination, Blake did not deny that he spoke with the police officers; he merely denied having confessed to owning the drugs and

guns in his ex-girlfriend's apartment.[1] Although Blake stated on direct-examination that he knew nothing about the contraband retrieved from the apartment, Blake did *not* deny his involvement with other drug activity; he offered no testimony on direct-examination regarding that issue. Only when Blake was pressed *on cross-examination* whether he had participated in other drug activity did he deny his involvement.

The government, seizing on that denial, offered the rebuttal testimony to impeach Blake's testimony. The majority approves of this impeachment on the ground that:

> Blake's admissions [to the officers], in which he indicated that he had been extensively involved in drug trafficking, was a primary part of the government's case-in-chief. As such, the admission that he was in the drug business was clearly a material issue in the case. When Blake denied making the incriminating statements to the police officers on direct, he called into question the veracity of the officer's testimony about the confession. The government was entitled to present evidence about Blake's prior involvement with drugs *to corroborate the testimony about Blake's confession.* Evidence of other drug transactions corroborates Blake's admissions about drug trafficking.

Majority op. at 338 (emphasis added). The majority relies principally on the Eleventh Circuit's 2–1 decision in *United States v. Cardenas*, 895 F.2d 1338, 1345–46 (11th Cir.1990) and the Ninth Circuit's original 2–1 decision in *United States v. Batts*, 558

F.2d 513, 517 (9th Cir.1977), *opinion withdrawn and substituted with*, 573 F.2d 599, *cert. denied*, 439 U.S. 859, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978).

I share the views of then-Judge (now Justice) Kennedy and Judge Young, as expressed in their dissenting opinions in *Batts* and *Cardenas*, respectively, that the government may not rebut, with extrinsic evidence, a contradiction which is elicited on cross-examination. *See Batts*, 558 F.2d at 519–22 (Kennedy, J., dissenting) ("Since Batts did not testify on the subject of his prior conduct during his direct examination (or voluntarily raise it on cross-examination), it was error to allow the ... cocaine into evidence.");[2] *Cardenas*, 895 F.2d at 1348 (Young, J., dissenting) ("In the instant case, the prosecution, not the defendant, injected into the case the issue of defendant's prior involvement with drugs.... Thus it cannot be said that [the defendant] 'made his true attitude toward illegal drugs a material issue' in this case."). To my view, the government may not cross-examine a defendant about unrelated misconduct under threat of offering extrinsic evidence tending to prove that the defendant did in fact engage in that activity. As the D.C. Circuit has observed:

> where a defendant in a criminal case takes the stand and on cross-examination denies charges of unrelated misconduct, the government may not attempt to impeach his credibility with extrinsic evidence of such misconduct.

*Tarantino*, 846 F.2d at 1409 n. 8.

I am not persuaded that by virtue of Blake's repudiation of his confession and

---

**1.** Blake testified on direct-examination as follows:

> A. ... [the police officers] started asking me about Sharon [Blake's ex-girlfriend].
> Q. All right. Did they at that point indicate to you that she lived at O'Connor Ridge?
> A. Yes, sir.
> Q. Did you agree with that?
> A. Yes, sir.
> Q. Okay. They have indicated to the jury that you told them that you had dope in her apartment and that you had guns in her apartment an all of these various incriminating things and guns in the pillow case. Did you tell these agents anything about anything like that?

> A. No, sir.
> Q. All right. Did you know anything about anything like that?
> A. No, sir.

Record, Vol. III at 33.

**2.** The Third Circuit has observed that then-Judge Kennedy's dissenting opinion in *Batts* apparently carried the day with the Ninth Circuit by virtue of its "subsequent modification of the opinion to eliminate all reliance upon rule 608(b) as a ground of admissibility." *United States v. Herman*, 589 F.2d 1191, 1197 (3d Cir. 1978) (holding that extrinsic evidence was inadmissible under rule 608(b)).

denial of the *charged* offenses, he thereby made a material issue of his confession to, and participation in, the unrelated, *un*charged transaction. The material issue in this case was whether Blake confessed to exercising dominion and control over the contraband seized from his ex-girlfriend's apartment, *not* whether he confessed to engaging in the reverse purchase transaction. I would agree that extrinsic evidence that Blake confessed to the charged crimes—a witness testifying that Blake told him that he had confessed to the police officers—would have been admissible, because that evidence would tend to contradict Blake's denial on the material issue of whether he confessed to the charged crimes. However, with respect to Blake's confession to participating in the unrelated, uncharged conduct, I would follow the Ninth Circuit's post-*Batts* decision and hold that, at most, "the government could attempt on further cross-examination to elicit a response from [the defendant] contradicting his prior testimony, but it could not properly impeach [the defendant] through extrinsic evidence of [an unrelated drug transaction]." *See United States v. Bosley*, 615 F.2d 1274, 1276–77 (9th Cir.1980) (extrinsic evidence inadmissible to contradict defendant's denial of participation in an unrelated drug transaction).

Thus, although I agree that "[w]hen Blake denied making the incriminating statements to the police officers on direct, he called into question the veracity of the officers' testimony about the confession," majority op. at 338, I do not believe that he thereby invited the government to introduce extrinsic evidence of all the conduct about which he allegedly confessed. Rule 608(b) and the specific contradiction rule cannot be given such elasticity.[3] Not every minute detail of a confession becomes material merely because the defendant disavows the confession.

Blake's participation in the unrelated, uncharged drug transaction was collateral to the material issues at trial. The fact that Blake denied confessing to the crimes charged did not, *a fortiori*, make it any less so.[4]

## II.

The majority holds, in the alternative, that the extrinsic evidence was admissible under rule 404(b) as evidence of Blake's intent and knowledge. The government did not offer the rebuttal evidence for that purpose, the district court did not admit it for that purpose, and the government did not argue on appeal that we should affirm on that basis. I therefore would decline to do so. *See DiMatteo*, 716 F.2d at 1367 ("we need not consider whether the evidence would be independently admissible, because the government, in accord with its understanding of the principle of specific contradiction, has never argued that [the witness]' testimony was offered for any purpose other that to attack ... credibility").

Moreover, I entertain serious doubts as to the admissibility of 404(b) evidence in a case, like this one, where the sole issue at trial was whether the defendant committed the charged acts. Blake's defense at trial was not that he mistakenly or unknowingly possessed the contraband, but that he had no connection to the contraband at all. On this score, I would follow the lead of the Second Circuit and "recognize[ ] a distinction between defense theories that claim that the defendant did not do the charged act at all, and those that claim that the defendant did the act mistakenly, with only the latter truly raising a disputed issue of intent." *See United States v. Colon*, 880

---

3. Rule 608(b) specifically prohibits the introduction of extrinsic evidence to support credibility. Thus, the rebuttal testimony was not admissible to bolster the credibility of the police officers.

4. Even were this extrinsic evidence admissible for impeachment purposes, I question whether its probative value was sufficient to overcome the substantial risk of unfair prejudice it car-

ried. *See* Fed.R.Evid. 403. As the majority acknowledges, "the government had obtained abundant evidence which it could use to impeach his credibility." Majority op. at 340. Thus, like the "unfairly prejudicial" reference to the Jamaica murders, I would conclude that "[t]he probative value of this cumulative impeachment was *de minimus*." *See id.* at 340–41.

F.2d 650, 657 (2d Cir.1989) (reversing conviction and remanding for new trial on the ground that the 404(b) evidence was inadmissible). Where knowledge and intent are not the central issues at trial, the proffered 404(b) evidence is not "particularly probative," *cf. United States v. Gordon,* 780 F.2d 1165, 1174 (5th Cir.1986) ("Rule 404(b) evidence is particularly probative where the government has charged conspiracy."), and its probative value is likely outweighed substantially "by its potential for unfair prejudice," *see Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988) (acknowledging the potential for unfair prejudice attendant to admission of 404(b) evidence), especially when the risk of prejudice is not tempered by a limiting instruction. *See United States v. Gonzalez–Lira,* 936 F.2d 184, 192 (5th Cir.1991) (holding that the limiting instruction, "combined with the defense's ability to bring out the truth on cross-examination," insured that "the introduction of the evidence relating to the prior smuggling attempt would not lead the jury to convict [the defendant] for the prior crime").[5]

## III.

Concluding, as I do, that the admission of the extrinsic rebuttal evidence was improper, I would reverse and remand for a new trial. I believe that the evidence of the uncharged drug transaction, especially in combination with the "inflammatory question" about whether Blake had killed someone, cannot be deemed harmless. As the majority acknowledges, "Blake's defense required the jury to determine whether he or the officers were lying" about his confession. *See* majority op. at 341. There was little, if any, evidence, other than the police officers' testimony of Blake's confession, proving that Blake possessed the guns and drugs in his ex-girlfriend's apartment. Blake's credibility was everything in this case. Although I too would agree that Blake's testimony was plagued with inconsistencies, from this remote vantage point, I cannot say with any degree of certainty that the erroneous admission of evidence establishing his participation in other drug activity, along with the "unfairly prejudicial" reference to the murder allegation, "had no substantial influence" on the jury in assessing his credibility and adjudging his culpability. *See id.* (quoting *United States v. Rodriguez,* 573 F.2d 330, 333 (5th Cir.1978)).

I respectfully dissent.

---

**5.** By affirming on this alternative ground, I fear that the majority trivializes the importance of the limiting instruction that *must* be given when the government seeks to admit 404(b) evidence and the defendant requests it. *See Huddleston,* 108 S.Ct. at 1502. In both *Batts,* 558 F.2d at 516, and *Cardenas,* 895 F.2d 1338, the jury was so instructed. Because the government offered the evidence *not* under rule 404(b), but specifically as impeachment evidence, there was no discussion regarding a 404(b) limiting instruction, none was requested, and therefore none was given.