# District of Columbia
# Court of Appeals

No. 13-CF-950

EUGENE A. KELLY,

Appellant,

v.

CF1-10235-11

UNITED STATES,

Appellee.

FILED
MAR 31 2016
DISTRICT OF COLUMBIA
COURT OF APPEALS

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: GLICKMAN and BLACKBURNE-RIGSBY, *Associate Judges*; and STEADMAN, *Senior Judge*.

## JUDGMENT

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the appellant's convictions and the judgment of the Superior Court are affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: March 31, 2016.

Opinion by Associate Judge Stephen Glickman.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-CF-950

EUGENE A. KELLY, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 3/31/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF1-10235-11)

(Hon. Herbert B. Dixon, Jr., Trial Judge)

(Argued March 10, 2015                              Decided March 31, 2016)

*Jessica Brand*, Public Defender Service, with whom *James Klein* and *Jaclyn Frankfurt*, Public Defender Service, were on the brief, for appellant.

*David B. Goodhand*, Assistant United States Attorney, with whom *Ronald C. Machen Jr.*, United States Attorney at the time the brief was filed, and *Elizabeth Trosman*, *Suzanne Grealy Curt*, and *Jennifer Kerkoff*, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and BLACKBURNE-RIGSBY, *Associate Judges*, and STEADMAN, *Senior Judge*.

GLICKMAN, *Associate Judge*:  Appellant Eugene A. Kelly was convicted after a jury trial of first degree murder while armed, assault with intent to kill while armed, and related firearms offenses.  On appeal, his sole claim is that the trial

judge committed reversible error under Superior Court Rule of Criminal Procedure 24 (c) by discharging an empaneled juror for tardiness. We conclude that the judge did not abuse his discretion and affirm appellant's convictions.

**I.**

Appellant's jury trial commenced on April 17, 2013. The government gave its closing argument at the end of the day on Wednesday April 24, and the judge instructed the jury to return the following morning for the defense closing. Initially the judge told the jury to be back at 9:30 a.m. He then corrected himself and explained to the jurors that they would have a "slight reprieve" and should return at 10:00 a.m. because some of the lawyers had to appear before another judge at 9:30 a.m. The judge repeated the 10:00 a.m. start time three times before excusing the jury.

The next morning, Juror 211 failed to appear on time. At 10:11 a.m., the judge took a short recess to wait for him. The juror was still missing when court resumed at 10:38 a.m. The judge informed the parties that his courtroom clerk told him that Juror 211 had been "persistently late" throughout the trial. An effort to reach the juror by telephone was unsuccessful. The judge asked the clerk to try to contact Juror 211 by email and inquired how the parties wished to proceed.

The government, expressing concern about "timeliness and deliberations," asked the judge to replace Juror 211 with an alternate. One of the prosecutors said this juror had been "significantly late" the previous day, when she personally saw him arrive in the hallway outside the courtroom "after 10:30, 10:40."[1] Her co-counsel added that she too understood Juror 211 had been late every day of trial.

Appellant's counsel, emphasizing that he was "ready to go" and not seeking to delay, asked for the juror to be given "a little more time" to arrive and stated that "[i]f he's not here by 11:00, I say you just start." Government counsel pointed out that Juror 211 was already 40 minutes late, and she expressed the concern that waiting until 11:00 a.m. would cause her to miss a scheduled meeting in her office that afternoon.

Observing that he did not "think that this delay is helpful to anyone," the judge asked appellant's counsel to discuss it with appellant. After doing so, appellant's counsel told the judge that "as much as I really want to start now and

---

[1] The juror's late arrival on Wednesday went unremarked because the court and the parties attended to various preliminary matters before calling the jury into the courtroom at 11:19 a.m.

get it over with, I would ask you [to] give [Juror 211] a few more minutes." The judge agreed to do so and took another recess at 10:44 a.m.

Court reconvened at 10:57 a.m. Juror 211 still had not arrived and had not called or answered the email sent by the courtroom clerk. The judge reiterated his understanding that "this juror has been late quite often." He considered it unlikely that Juror 211 could have been confused about the start time and concluded that his "absence is seriously interfering with the progress of this trial." With the parties' agreement, the judge ordered the trial to proceed.[2]

As the jury was lined up and about to enter the courtroom, however, the judge called counsel to the bench to inform them that Juror 211 "is on the phone now." Stating that he did not yet know the juror's location or "what the issue is," the judge told counsel he would "find out something in just a moment." After a pause, during which the courtroom clerk evidently spoke with Juror 211 by phone, the judge told counsel he still did not know how long it would take the juror to

---

[2] Because of the "excessive delay" occasioned by Juror 211, the judge said that other matters scheduled to be taken up at 11:00 would have to be deferred until the next break in the trial.

arrive, and that he intended "to just tell this juror to report to the outside of [the] courtroom."

Appellant's counsel objected. Saying he thought the juror was "close by somewhere parking" and that there was no "indication he is unable to serve as a juror," counsel asked the judge to "give him time to get here."[3] In response to this request, the judge asked the clerk to find out where Juror 211 was parking. The answer to this question does not appear in the transcript. Counsel for the government asked the judge to proceed with the trial because "[t]his is causing further delay [and] the other jurors have been waiting for an hour."

The judge agreed with the government's position and decided to proceed without Juror 211. Observing that the juror "could have called in much earlier than this," the judge decided not to "tolerate the additional disruption of this trial [that would be] likely to occur" if he did not replace him with an alternate.

---

[3] The record does not reveal how appellant's counsel gained his understanding that Juror 211 was parking somewhere near the courthouse, or whether that understanding was accurate. But as counsel's statement was not disputed, we shall assume it is true for purposes of evaluating whether the judge abused his discretion.

At 11:09 a.m., the fourteen present members of the jury (which included three alternates) filed into the courtroom and the trial resumed with the defense's closing argument. Following the government's rebuttal, the judge released two of the three alternates, leaving the third to substitute for Juror 211. The judge then excused the reconstituted jury at 12:19 p.m. to begin its deliberations.[4]

Juror 211 arrived sometime between 11:00 a.m. and noon and waited outside the courtroom until the closing arguments were concluded. At 12:22 p.m., the judge reconvened the proceedings to address him. The judge informed Juror 211 that he intended to schedule a hearing to determine whether he should be held in contempt for his "persistent lateness and [his] excessive lateness today." As this would be a criminal matter, the judge advised Juror 211 to wait until the hearing date before offering an explanation for his tardiness, even if he had "an excellent reason." The juror took this advice, and the hearing was set for May 15.[5]

---

[4] The judge instructed the jury prior to closing arguments.

[5] The record of the contempt hearing is not before us in this appeal. In its brief, the government represents that the judge ultimately discharged the show-cause order after Juror 211, represented by counsel, proffered that he thought he was supposed to arrive by 11:00 a.m. and that he had sought treatment for depression and obsessive-compulsive disorder.

In the meantime, appellant's jury deliberated the rest of Thursday without reaching a verdict. The judge excused the jurors at 4:49 p.m. with instructions to return at 9:30 a.m. on the following Monday to continue their deliberations. The judge emphasized that "[w]e need all 12 jurors in order to resume deliberations on Monday."

On that Monday, April 29, appellant moved for a mistrial, arguing that the court had violated Criminal Rule 24 (c) by striking Juror 211 without finding him unable or disqualified to perform his juror duties.[6] The judge orally denied the motion from the bench. He explained that he had replaced Juror 211 with an alternate because the juror was "extremely late" on Thursday; this lateness "was affecting the ability of this trial to proceed"; and after having started closing arguments the preceding day, the judge did "not want[] to suffer any more delays with respect to this trial."

---

[6] The motion also asserted that striking Juror 211 violated appellant's rights under the Due Process Clause of the Fifth Amendment. Appellant has abandoned this constitutional claim on appeal.

The jury continued to deliberate until 3:50 p.m. Monday afternoon, at which time it sent a note stating it had reached a verdict. The guilty verdicts were announced at 4:12 p.m.

## II.

Superior Court Rule of Criminal Procedure 24 (c) empowers the trial court to replace an empaneled juror who "becomes or is found to be unable or disqualified to perform juror duties." This represents

> a narrow grant of power to the trial court; if the specified conditions are not met, the court is without legal authority to replace a juror with an alternate during trial. The limitations set forth in Rule 24(c) serve to protect the defendant's rights to trial by jury and to a unanimous verdict, which would be imperiled if the court could replace a juror with an alternate arbitrarily or with insufficient justification.[7]

Appellant contends that the trial judge violated Rule 24 (c) because Juror 211 was neither shown nor found to be unable or disqualified to perform the duties of a juror in this case. We disagree.

---

[7] *Hinton v. United States*, 979 A.2d 663, 670 (D.C. 2009) (en banc).

In recognition of the trial judge's familiarity with the trial proceedings, we review the judge's decision to replace an empaneled juror with an alternate for abuse of discretion.[8] We would conclude that the judge exercised his discretion erroneously if he "replaced the juror for an improper or legally insufficient reason," if his ruling "lacked a firm factual foundation," or if he "otherwise failed to exercise [his] judgment in a rational and informed manner."[9] "It is not our function, however, to second-guess a reasonable judgment of the trial court."[10]

We conclude that the trial judge did not abuse his discretion in deciding to replace Juror 211, who was over an hour late, with an alternate juror. To begin with, it is important to appreciate that this case is not like *Hinton* and the other cases in which we have found violations of Rule 24 (c). In each of those cases, an undeveloped record did not support a finding that the removed juror was unable or disqualified to perform juror duties.[11] This case is different because a juror's

---

[8] *Id*. at 683.

[9] *Id*. at 683 (internal quotation marks, footnotes and citations omitted).

[10] *Id.* at 684.

[11] In *Hinton*, we held that the trial judge's concerns about questions a juror posed for witnesses did not justify the juror's replacement with an alternate because even if some of the questions "seemed unusual or immaterial, they were not indicative of an incapacity to follow and understand the evidence or to

*(continued…)*

prolonged absence is "an observable fact" that "manifestly interferes with the prompt trial of a case."[12] Federal courts have viewed juror absence as a sufficient basis for replacing a juror under Federal Rule of Criminal Procedure 24 (c), from which our rule is derived,[13] particularly in cases, like this one, where the trial judge gave the jury unambiguous instructions as to when to return to court.[14] An hour's delay of a jury trial is not insignificant.[15] Moreover, the judge had undisputed

---

*(continued…)*

communicate and deliberate rationally and fairly with the other jurors." *Id*. at 684. *See also Johnson v. United States*, 50 A.3d 1050, 1053-54 (D.C. 2012) (reversible error to replace a juror on account of her "unique" behavior when the judge found no misconduct and proceeded on "the erroneous principle that he had the 'discretionary authority' to replace her without specific justification"); *Hobbs v. United States*, 18 A.3d 796, 800-01 (D.C. 2011) (abuse of discretion to remove empaneled juror after close of evidence "out of abundance of caution" even though the record did not support a finding that the juror was biased or otherwise unable or disqualified to perform her duties).

[12] *United States v. Rodriguez*, 573 F.2d 330, 332 (5th Cir. 1978).

[13] Although this case presents us with the task of interpreting our local Superior Court Rule, we are guided by the interpretation given the counterpart Federal Rule. *See Hinton*, 979 A.2d at 675-80.

[14] *See United States v. Peters*, 617 F.2d 503, 505 (7th Cir. 1980) (upholding the replacement of an absent juror when "[t]he judge had clearly informed the jury of the time to reconvene and all the other jurors understood his instructions.").

[15] Other courts have upheld the replacement of jurors where the judge was considerably less patient. *See, e.g.*, *United States v. Colkley*, 899 F.2d 297, 303 (4th Cir. 1990) ("[T]he district court clearly did not abuse its discretion in ruling that the juror's failure to appear for thirty minutes of testimony warranted substitution without further inquiry."); *Peters*, 617 F.2d at 504-05 (upholding

*(continued…)*

information from the prosecutor and the courtroom clerk that Juror 211 had been late repeatedly throughout the trial. What is past is, often, prologue: The juror's "persistent lateness" (which was exacerbated by his failure to call in and advise the court that he would be late) augured his future unreliability in the event the jury's deliberations continued into the following week (as they did).

It was Juror 211's duty as a juror to arrive on time for trial so as not to impede the proceedings, inconvenience the participants, and otherwise disrupt the orderly functioning of the court and the administration of justice. "Common sense dictates that when a juror is not present, he or she is, at that time, unable to perform

---

*(continued…)*
decision to replace juror who was five minutes late on day counsel were to give their closing arguments); *United States v. Domenech*, 476 F.2d 1229, 1232 (2d Cir. 1973) (no abuse of discretion in replacing juror who did not arrive within ten minutes on day judge was to charge the jury); *see also United States v. Johnson*, 223 F.3d 665, 669 (7th Cir. 2000) (Posner, J.) ("[I]t is a sound practice *immediately* to replace a no-show juror, as authorized by Fed. R. Crim. P. 24 (c), out of consideration for the remaining jurors and in order to remind them of the seriousness of their duty.") (emphasis added; internal citations omitted). In citing these cases, we do not mean to endorse the imprudently hasty replacement of jurors when they do not arrive promptly; but the cases underscore two important points: (1) Courts historically have found juror tardiness to be a valid ground for replacing a juror under Rule 24 (c), and (2) the significance of Juror 211's lateness in this case cannot be discounted because he was "only" an hour or so late.

the duty of a juror."[16] We agree with the conclusion of other courts that "when a juror is absent from court for a period sufficiently long to interfere with the reasonable dispatch of business there may be a sound basis for his dismissal."[17] A "sound basis" under Rule 24 (c) to replace such a juror with an alternate without further delay may exist when the court has no reason to believe the juror's arrival is imminent; when the court has reason to believe the juror's arrival (even if imminent) will occasion further delay of the trial; or when the juror's repeated tardiness or other conduct indicates to the court that the juror cannot be relied upon to show up for trial on time in the future. "Although the defendant may in some circumstances have a 'right to have his trial completed by a particular tribunal', . . . that right must often give way to competing concerns such as the need for judicial efficiency."[18]

---

[16] *State v. Brown*, 552 S.E.2d 390, 396-97 (W. Va. 2001) (upholding replacement of juror under state counterpart to Rule 24 (c) even though he telephoned the court to say he would be late because of a flat tire); *cf. Peters*, 617 F.2d at 505 ("[I]t is difficult to imagine a more complete disqualification than a failure to appear.").

[17] *Rodriguez*, 573 F.2d at 332 (internal quotation marks omitted).

[18] *Peters*, 617 F.2d at 505 (quoting *United States v. Jorn*, 400 U.S. 470, 484 (1971) (plurality opinion)).

The trial judge in this case did not cite Rule 24 (c) or employ its specific language in articulating his ruling—he did not expressly say he was replacing Juror 211 because the juror was unable to serve or was disqualified. But "[a] trial court need not use this language . . . so long as it 'was scrutinizing whether the juror had the capacity to continue to serve as a juror.'"[19] The judge replaced Juror 211 because he found the juror's absence to be "seriously interfering" with the progress of the trial and that continuing to wait for him would likely result in additional "disruption." This was equivalent to a finding of incapability, and there is no suggestion that the judge removed the juror for any improper reason.

The judge did not act precipitously or without solicitude for appellant's desire to retain Juror 211 (and this would be a different case if he had). On the contrary, only after waiting an hour without hearing from Juror 211 and unsuccessfully trying to contact him did the judge decide to proceed with the trial without this juror. It was at just this time, as the jury was about to file into the courtroom, that Juror 211 phoned the court, apparently to say he was parking his car and on his way. Appellant faults the judge for not reversing course at this point

---

[19] *Hobbs*, 18 A.3d at 800 (quoting *Hinton*, 979 A.2d at 684; brackets omitted); *see also Rodriguez*, 573 F.2d at 332 (explaining that a "formal finding" is not "required when a juror manifestly becomes unable to perform his duties").

and waiting for the juror to show up, and also for not inquiring of the juror as to the reason for his tardiness. Certainly the judge could have done those things, but we are not persuaded he abused his discretion under Rule 24 (c) by concluding it was time for the trial to resume without incurring further delay and inconvenience on account of this juror.

Juror 211 may have been near the courthouse, but he still had not actually appeared there. It was uncertain how long it actually would take him to get to the courtroom. Once he did arrive, any inquiry into the explanation for his tardiness would result in further delay. In view of Juror 211's track record of truancy, it was unlikely he would be able to assure the judge of his future reliability in the event the jury's deliberations were to carry over to the following week after a three-day hiatus. And the judge had an additional reason to forgo the inquiry—because he was going to require Juror 211 to show cause why he should not be held in criminal contempt, fairness concerns dictated against asking the juror to explain himself before he had obtained and conferred with legal counsel.

Thus, this was a situation in which it was "reasonabl[e] [to] believe[] that inquiry would be unavailing or in any event too disruptive to undertake on the last

day of trial."[20]  Numerous courts have concluded that a trial judge has discretion

under Federal Rule of Criminal Procedure 24 (c) to dispense with inquiring into the

reason for a juror's failure to show up on time before replacing him.[21]  We hold

that such inquiry was not mandatory where, as here, the trial was about to resume

after having already been delayed quite significantly by the juror, and the juror's

record of tardiness raised further doubts about his reliability and ability to show up

on time in the future.  There is only so much inconvenience and delay that the

other jurors, the parties, their counsel, and the court should be asked to endure.[22]

---

[20] *Peters*, 617 F.2d at 505.

[21] *See, e.g.*, *id.* ("Nor does [Fed. R. Crim. P.] 24 (c) require, as defendant suggests, that [the trial judge] conduct such an inquiry, for it authorizes him to replace jurors who 'become * * * disqualified' . . . and it is difficult to imagine a more complete disqualification than a failure to appear.") (internal citation omitted); *see also Johnson*, 223 F.3d at 669 (immediate replacement of a "no-show juror" held to be "sound practice" under Fed. R. Crim. P. 24 (c) even though "[t]he judge made no effort to find out why the juror who was replaced had not shown up"); *Colkley*, 899 F.2d at 303; *Rodriguez*, 573 F.2d at 332; *Domenech*, 476 F.2d at 1232.

[22] We think it worth emphasizing that our conclusion likely would be different if this were a case in which the court had, without appropriate inquiry, excused an absent juror *after* the jury had retired to deliberate, leaving the verdict to be returned by only eleven jurors.  This situation is governed by Superior Court Criminal Rule 23 (b), which provides that, unless the parties stipulate otherwise, a valid verdict may be returned by eleven jurors only in "extraordinary circumstances," where the court "finds it necessary" to excuse a juror from a deliberating jury for "just cause."  Given the importance of a defendant's right to a unanimous verdict by a jury of twelve, a court would have to make a "reasonable investigation" into the absent juror's availability before it could find the requisite

*(continued…)*

## III.

We hold that the trial judge did not abuse his discretion under Criminal Rule 24 (c) by replacing Juror 211 with an alternate juror. Appellant's convictions and the judgment of the Superior Court are hereby

*Affirmed.*

---

*(continued…)*
just cause and necessity to permit deliberations to continue with only eleven jurors. *See United States v. Essex*, 734 F.2d 832, 844 (D.C. Cir. 1984) (holding that trial court abused its discretion by failing to determine the whereabouts of a juror who failed to show up after deliberations were under way); *see also, e.g.*, *United States v Ginyard*, 444 F.3d 648, 653 (D.C. Cir. 2006) (stating that when a juror fails to appear after deliberations are under way, the "court's duty of inquiry extends beyond what might otherwise appear to be reasonable inferences from known facts when uncertainties about the juror's continuing availability persist"); *United States v. Araujo*, 62 F.3d 930, 934 (7th Cir. 1995) ("Before dismissing a juror pursuant to [Fed. R. Crim. P.] 23 (b), the district court must render a finding that it is necessary to do so for just cause; and if the record does not already make clear the precise nature or likely duration of the juror's inability to serve, the court bears an affirmative duty to inquire further into those circumstances.").