**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert H. BOURGEOIS and Richard H. Crowe, Jr., Defendants–Appellants.**

No. 90–1954.

United States Court of Appeals, Fifth Circuit.

Jan. 3, 1992.

Rehearing Denied Feb. 12, 1992.

---

**22.** *See Nissho–Iwai Co. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1539 n. 14 (5th Cir. 1984).

Howard A. Weinberger, Dallas, Tex., for defendant-appellant Bourgeois.

Michael P. Gibson, Dallas, Tex., for defendant-appellant Crowe.

Marvin Collins, U.S. Atty., Dallas, Tex., Brett Mary Digman, Alan Hechtkopf, Robert E. Lindsay, Chief, Tax Enforcement Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before THORNBERRY, DAVIS, and WIENER, Circuit Judges.

THORNBERRY, Circuit Judge:

Defendants Richard Crowe and Robert Bourgeois were convicted by a jury of committing tax fraud. They appeal their convictions, asserting numerous grounds of error as bases for reversing their convictions. After reviewing the extensive record in this case, we find no error. We therefore AFFIRM both Defendants' convictions.

I. *Background*

On May 24, 1989, Richard Crowe, Robert Bourgeois, and Eric Laub were indicted for conspiring to commit tax fraud and for filing false partnership and individual tax returns. In September 1989, the three Defendants were tried by a jury in a trial that lasted more than three weeks. The jury acquitted Defendant Laub but convicted Defendants Crowe and Bourgeois on all charges.

Richard Crowe was president and chairman of the board of Independent American Real Estate, Inc. (IARE), a real estate investment company, and Robert Bourgeois was president of IARE's investment division. Eric Laub was a real estate syndicator who was involved in real estate ventures with IARE. In the fall of 1985, Crowe began negotiating a real estate deal with Laub. At a meeting in November, Laub told Crowe that he was concerned about tax liability on the income he would generate from the transaction. Crowe told Laub that he would look into a tax shelter to offset the income.

In December of 1985, Crowe and Laub closed the real estate transaction, and Crowe and Bourgeois arranged a tax shelter for the income Laub received. They admitted Laub as a limited partner in a partnership named Wedgewood Associates, Ltd. (Wedgewood), giving Laub a 98% partnership interest. They amended the Wedgewood partnership agreement in December 1985, but backdated the amendment to January 2, 1985 so that Laub could claim 98% of the partnership's losses for all of 1985. In 1986, a 1985 partnership tax return was filed for Wedgewood, and a Form K–1 was sent to Laub for use in preparing his individual tax return. Using the Form K–1, Laub claimed 98% of Wedgewood's 1985 losses on his individual tax return for 1985. Crowe, Bourgeois, and Laub were indicted for tax fraud in connection with the tax returns filed for both Wedgewood and Laub.

At trial, the prosecution called a number of IARE employees to testify in its case-in-chief. Two of those employees, Cherlyn Whaley and Randy Edwards, were granted immunity from prosecution in exchange for their testimony. They testified that under the direction of Robert Bourgeois, they pre-

pared the amendment to the Wedgewood partnership agreement, and another employee delivered it to Richard Crowe's office for Crowe's and Laub's signatures. Bourgeois was out of town at the time, but Cherlyn Whaley testified that he directed her to sign his name to the partnership agreement so that it could be filed with the Secretary of State's office by the 1985 year end. In late December 1985, Cherlyn Whaley signed Bourgeois's signature and notarized the document, falsely representing that Bourgeois, Crowe, and Laub signed the document in her presence on January 2, 1985.

The jury acquitted Defendant Laub, but convicted Defendants Crowe and Bourgeois. Defendant Crowe was convicted of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, and aiding and assisting the preparation of false tax returns for Eric Laub, individually, and for Wedgewood Associates, Ltd. in violation of 26 U.S.C. § 7206(2). Defendant Bourgeois was also convicted of conspiracy under 18 U.S.C. § 371, as well as filing a false tax return for Wedgewood Associates, Ltd. in violation of 26 U.S.C. § 7206(1), and aiding and assisting the preparation of a false tax return for Eric Laub in violation of 26 U.S.C. § 7206(2).

The trial judge, Judge Porter, became disabled after the trial, and the case was transferred to Judge Fitzwater for sentencing. Defendant Crowe moved for disqualification of Judge Fitzwater or for a new trial under Rules 25(b) and 33 of the Federal Rules of Criminal Procedure. Judge Fitzwater denied Crowe's motions and sentenced both Defendants on November 2, 1990.

On appeal, Crowe asserts a number of grounds of error as the bases for reversing his conviction. Bourgeois joins in and asserts only a few of the claims presented by Crowe. Crowe's first ground of error is that the evidence is insufficient to support the jury's verdict on the conspiracy count. The rest of the claims can be grouped into three categories: pretrial rulings, rulings during trial, and post-trial rulings. We address each of the claims in turn.

## II. *Issues*

### A. Sufficiency of the Evidence

Defendant Crowe asserts that the evidence presented at trial is insufficient to support his conspiracy conviction. In reviewing sufficiency of the evidence claims, we must view the evidence in the light most favorable to the verdict. We must determine whether a reasonable trier of fact could find that the essential elements of conspiracy were proved beyond a reasonable doubt. *United States v. Martin*, 790 F.2d 1215, 1219 (5th Cir.1986).

In order to prove a conspiracy, the prosecution must show that the defendant either positively or tacitly agreed with another person to accomplish a common and unlawful plan, and that during the existence of the conspiracy, one of the conspirators knowingly committed an overt act in furtherance of the conspiracy. *Id.* Defendant Crowe primarily complains that the government failed to prove that Crowe knew of or agreed to participate in any illegality.

At trial, the government presented evidence of a meeting between Crowe and Laub in which Crowe told Laub that he would "look into" tax shelters to offset income of approximately $325,000. Randy Edwards testified that Bourgeois indicated to him that Crowe had directed Bourgeois to admit Laub to the Wedgewood partnership. Laub's interest in Wedgewood allowed him to claim tax losses of approximately $325,000. Although Crowe claimed that he never signed the agreement, several witnesses testified that the signature on the backdated Wedgewood partnership agreement appeared to be Richard Crowe's signature. The government also established Crowe's familiarity with the tax laws prohibiting retroactive losses for partners joining partnerships late in a tax year.

We believe that a rational trier of fact could find that this evidence established beyond a reasonable doubt a tacit agreement by Crowe to accomplish an illegal purpose. Although there was no direct evidence of Crowe's agreement to the il-

legal transaction, we noted in *United States v. Martin* that "[n]o express agreement to violate the law need be shown and the conspiracy may be proven by showing that the defendant conspired with one or more others ... to achieve an illegal purpose." *United States v. Martin*, 790 F.2d 1215, 1219 (5th Cir.1986). We find that the evidence is sufficient to support Defendant Crowe's conviction of conspiracy to defraud the United States.[1]

### B. Pretrial Rulings

Judge Porter held a pretrial hearing to settle two matters related to witness Cherlyn Whaley. First, both Defendants had moved to dismiss their indictments due to prosecutorial misconduct in the presentation of Ms. Whaley to the grand jury. The Defendants claimed that the prosecution misled the members of the grand jury through its questioning of Cherlyn Whaley, and that the indictments issued by that grand jury were therefore defective. The second issue to be settled was whether Cherlyn Whaley's testimony would be excluded or limited in the upcoming trial, and whether any cautionary jury instructions would be necessary.

Ms. Whaley testified before the grand jury in March of 1989 and again in May of 1989. In March, Ms. Whaley told the grand jury that Bourgeois signed the Wedgewood partnership agreement. At a meeting with the prosecutors on the day before her second grand jury appearance in May, Ms. Whaley began to question whether her recollection of the events surrounding the signing of the partnership agreement was correct. She became unsure whether Bourgeois had signed the document, and she expressed her doubts to the prosecutors. They questioned her extensively for several hours, but she could not recall anything definite. She maintained that, although she had some doubts, to the best of her knowledge at that time, the signature was Bourgeois's. Before the grand jury the next day, the prosecutor asked Ms. Whaley, "[T]o the best of your knowledge, does it appear to be Bob Bourgeois' signature on the Wedgwood [sic] Partnership?" Ms. Whaley answered, "Yes."

Ms. Whaley later consulted a hypnotist to help her remember who signed the Wedgewood partnership agreement. She underwent one hypnotic session, but her memory was not jogged during that session or immediately afterward. Ms. Whaley testified at the pretrial hearing that she did not believe she had been hypnotized during the session; the hypnotist testified that the session was unsuccessful. Sometime after the session, but prior to trial, Ms. Whaley's memory returned. She remembered that Bourgeois did not sign the agreement; rather, she forged Bourgeois's signature on the agreement at his request.

At the end of the pretrial hearing, Judge Porter made two rulings. He overruled the motion to dismiss the indictment for prosecutorial misconduct. He found that the prosecution did not take any affirmative steps that amounted to misconduct, and that Ms. Whaley's statement to the grand jury in May 1989 was the truth as she knew it at that time. In addition, he found that the evidence was clear and convincing that Ms. Whaley was not hypnotized at her session with the hypnotist. He therefore refused to limit Ms. Whaley's testimony at trial and denied the Defendants' request for cautionary jury instructions regarding hypnotically refreshed testimony. The Defendants appeal both of these rulings.

We review the district court's findings regarding prosecutorial misconduct for clear error. *United States v. Lauga*, 726 F.2d 1032, 1034 (5th Cir.1984); *United States v. Cathey*, 591 F.2d 268, 272 (5th Cir.1979). The evidence presented at the pretrial hearing amply supports the district court's finding that Ms. Whaley did not perjure herself before the grand jury, and also that the question presented to Ms. Whaley was not designed to mislead the

---

1. As a second ground of error, Crowe argues that insufficient evidence on the conspiracy count renders the jury charge on the aiding and assisting counts erroneous. Because Crowe's insufficiency of the evidence claim fails, this second claim necessarily fails as well.

grand jury but rather to limit Ms. Whaley's testimony to facts about which she was confident. In the absence of the use of perjured testimony or government misconduct, the Defendants' claim that the indictment is defective must fail. *See United States v. Cathey, supra; United States v. Sullivan,* 578 F.2d 121, 124 (5th Cir.1978). We therefore affirm the district court's denial of the Defendants' motion to dismiss their indictments.

█ The Defendants claim that the district court's refusal to exclude or limit Cherlyn Whaley's testimony or to give a cautionary jury instruction regarding hypnotically enhanced testimony was error under *United States v. Valdez,* 722 F.2d 1196 (5th Cir.1984). The district court's rulings were based on its factual finding that Cherlyn Whaley was not hypnotized during her session with the hypnotist. In light of the evidence presented at the pretrial hearing, we cannot say that this factfinding is clearly erroneous. *Valdez* requires certain procedural protections when the court admits hypnotically enhanced testimony, but only when it is established that the witness was hypnotized. The district court did not err in refusing to implement those protections in this case.

### C. Rulings during Trial

The Defendants assert that Judge Porter committed errors during the trial which provide grounds for reversing their convictions. Both Defendants challenge Judge Porter's rulings and comments regarding the testimony of Randy Edwards. In addition, Defendant Crowe challenges Judge Porter's rulings and comments regarding the testimony of his proffered handwriting expert. Finally, Defendant Crowe challenges Judge Porter's decision to excuse a juror who called in sick. Upon review of the record, we find that Judge Porter did not exceed the bounds of his discretion in his rulings and comments during trial.

### (1) *The Testimony of Randy Edwards*

Randy Edwards provided some of the most damaging testimony against the Defendants at trial, and the Defendants at-

tempted a vigorous cross-examination to impeach his credibility. Their claim on appeal is that actions taken by the trial judge during their cross-examination compromised their effort to impeach Mr. Edwards. The Defendants claim that the judge committed error by rehabilitating Edwards's credibility through comments and instructions to the jury. In addition, they claim that Judge Porter's rulings restricting cross-examination violated their Sixth Amendment right of confrontation.

The Defendants' claim that Judge Porter improperly rehabilitated Edwards is primarily directed to one statement the judge made to the jury. The judge had a dilemma with regard to a line of questioning directed at Edwards by the Defendants. The questions were about statements Edwards made during the IRS's investigation. If Edwards were to fully answer the questions, he would need to talk about other transactions still under investigation by the IRS. The judge had earlier ruled that evidence of the other transactions was inadmissible. Rather than allow Edwards to testify about the other transactions, the judge made a statement to the jury giving enough information for the jury to understand Edwards' testimony without saying anything substantive about the other transactions. The Defendants objected, claiming that the judge's statement to the jury bolstered Edwards' credibility.

█ We find that the judge was well within the bounds of his discretion in making the statement to the jury. A trial judge may clarify facts presented to the jury as a matter of discretion. *United States v. Duncan,* 919 F.2d 981, 989 (5th Cir.1990) (quoting *Moore v. United States,* 598 F.2d 439, 442 (5th Cir.1979); *United States v. Bartlett,* 633 F.2d 1184, 1188 (5th Cir.1981). Judge Porter provided the jury with enough information to understand the witness's testimony while restraining the prosecution from disclosing evidence that was prejudicial to the Defendants. He stressed to the jury, on this and other occasions, to judge the credibility of the witnesses for themselves. His statement to the jury certainly cannot be character-

ized as so lacking in neutrality as to deny the Defendants a fair trial. *See Duncan,* 919 F.2d at 989.

On several other occasions during the Defendants' cross-examination of Edwards, the judge intervened, questioned the witness, and commented on the testimony he elicited. Defendants argue on appeal that the judge's questions bolstered Edwards' credibility and denied them a fair trial. After reviewing the record in detail, we find that the judge's questions and comments are nothing more than attempts to "elicit facts not yet adduced or clarify those previously presented," and as such are within the bounds of the judge's discretion. *Duncan,* 919 F.2d at 989 (citing *Moore v. United States,* 598 F.2d 439, 442 (5th Cir.1979)).

▪ The Defendants also complain on appeal that Judge Porter violated their Sixth Amendment right of confrontation by improperly limiting their cross-examination of Edwards. Judge Porter refused to allow defense counsel to cross-examine Edwards on several collateral matters, and also limited cross-examination regarding Edwards's immunity agreement. We note at the outset that the trial court has broad discretion in limiting the scope of cross-examination. *See United States v. Duncan,* 919 F.2d 981, 988 (5th Cir.1990).

▪ The collateral matters that defense counsel attempted to bring out on cross-examination related to Edwards's marital status, his failure to repay a $2,000 loan from Bourgeois, and the large number of allowances he claimed on his W–4 form. Although Judge Porter excluded evidence about these matters under Rules 402, 403 and 608(b) of the Federal Rules of Evidence, he allowed the Defendants to make an offer of proof. Based on this record, we find that the trial court's exclusion of the evidence was not an abuse of discretion.

▪ The Defendants also argue that the judge erred by restricting cross-examination on Edwards's immunity agreement. Defense counsel questioned Edwards extensively about the agreement, but the judge cut them off when they attempted to

mischaracterize the agreement as granting prosecutors the authority to prosecute Edwards for perjury if the prosecutors disagreed with his testimony. Later, during cross-examination, defense counsel asked Edwards several times whether he was lying about what happened. The judge finally intervened and said, "Well, did it or didn't it happen. He's testified to it. If he says it didn't now, he's in violation of his [immunity] agreement, as I understand it." Upon objection by the defense, Judge Porter explained that he did not mean that Edwards's prior testimony was true, but rather that if Edwards now contradicted his prior testimony, then one of the statements would necessarily be false. The judge reminded the jury to disregard his comments and judge the credibility of the witnesses for themselves. The Defendants claim that this conduct by the judge hindered their cross-examination in violation of their Sixth Amendment right of confrontation.

The court's rulings and comments regarding the immunity agreement were not unduly restrictive. They certainly did not approach the level of restrictions placed on defense counsel in *Carrillo v. Perkins,* 723 F.2d 1165 (5th Cir.1984) or *United States v. Mayer,* 556 F.2d 245 (5th Cir.1977), the two cases cited by the Defendants as supporting their claim. Judge Porter allowed the Defendants to adequately develop any bias Edwards had based on his immunity agreement with the prosecution. We therefore find that the Defendants' Sixth Amendment rights were not violated. The comments and rulings cited by the Defendants do not amount to an abuse of the district court's discretion in limiting cross-examination.

### (2) *Ray Walker's Qualifications as an Expert*

▪ Defendant Crowe claims that Judge Porter erred by refusing to qualify his proffered expert, Ray Walker, as an expert on handwriting and by commenting on Walker's credibility in making that determination in front of the jury. The district court has broad discretion in determin-

ing the qualifications of an expert; a ruling on an expert's qualifications will not be disturbed unless it is clearly erroneous. *United States v. Johnson,* 575 F.2d 1347, 1360–61 (5th Cir.1978).

The judge conducted a hearing to determine Walker's qualifications as a handwriting expert. Mr. Walker testified to expertise in a vast array of subjects, one of which was forensic document examination. Mr. Walker stated that he had studied Egyptology, psychology, hypnosis, and religion at various institutions. He testified that he had fulfilled the requirements for a masters degree in graphoanalysis, the analysis of personality through examination of handwriting, although a disagreement with the institute kept him from receiving his degree. He also claimed to hold a doctorate in metaphysics and religion, which he completed by correspondence. He said that he practiced as a minister for many years. He also operated the Universal Mind Spa for eight years, where he practiced graphotherapy, the alteration of personality by handwriting modification. Mr. Walker claimed that, in addition to his other occupational endeavors, he practiced forensic document examination. He was not, however, a member of the American Board of Forensic Document Examiners.

To qualify as an expert, "the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *Johnson,* 575 F.2d at 1361 (quoting *Fineberg v. United States,* 393 F.2d 417, 421 (9th Cir.1968). Judge Porter was in the position to assess Walker's credibility and to evaluate the conflicting evidence on Walker's qualifications. We do not believe that the judge's decision not to qualify Walker as a handwriting expert was clearly erroneous. Furthermore, the judge's ruling to that effect in front of the jury does not constitute impermissible commentary on the credibility of the witness.

### (3) *Excusing a Sick Juror*

In the second week of trial, Judge Porter excused a juror who called in sick and replaced her with the first alternate juror. Crowe's attorney objected because the court had failed to notify the parties prior to excusing the juror, thus depriving them of the ability to determine the nature of her illness and the length of time she would be unavailable. Crowe asserts that his conviction should be reversed because the factual basis for excusing the juror is insufficient.

"[T]he trial judge, in his *sound discretion,* may remove a juror and replace him with an alternate juror whenever facts are presented which convince the trial judge that the juror's ability to perform his duty as a juror is impaired." *United States v. Rodriguez,* 573 F.2d 330 (5th Cir. 1978) (emphasis in original). In *Rodriguez,* the Fifth Circuit held that the mere absence of a juror for an unreasonable length of time provided a sound basis for the judge's decision to excuse the juror, even though in that case, as here, the defendant was not given an opportunity to develop facts for the record showing the cause of the juror's absence. Following *Rodriguez,* we find that the trial court's decision to excuse a juror after she reported to the court that she was ill does not constitute an abuse of discretion.

### D. Post–Trial Rulings

After the trial, Judge Porter became disabled, and the case was transferred to Judge Fitzwater for sentencing. Defendant Crowe requested that Judge Fitzwater recuse himself or grant a new trial pursuant to Rule 25(b) of the Federal Rules of Criminal Procedure because the judge would be unable to assess the credibility of the witnesses or acquaint himself with the complex factual and legal issues at trial. Judge Fitzwater denied Crowe's motions.

Rule 25(b) of the Federal Rules of Criminal Procedure provides that a judge other than the judge who presided at trial may pass sentence when the presiding trial judge becomes disabled after trial, "but if that judge is satisfied that a judge who did not preside at the trial cannot perform those duties or that it is appropriate for

any other reason, that judge may grant a new trial." Fed.R.Crim.P. 25(b). We review a decision under Rule 25(b) for abuse of discretion. *Government of Canal Zone v. O'Calagan,* 580 F.2d 161, 165 (5th Cir. 1978).

■■■ At the sentencing hearing, Judge Fitzwater recited the written materials that he reviewed in preparation for sentencing Defendant Crowe. Those materials included the transcript of the trial and pretrial hearings, the presentence report together with the Defendant's objections to the report, the Defendant's responses to probation inquiries, sentencing memoranda, and letters written on Defendant Crowe's behalf. Prior to the sentencing hearing, Judge Fitzwater requested that the Defendants specify any particular portion of the record that the judge should especially note. In response to Judge Fitzwater's request, Defendant Crowe claimed that he was unable to identify any specific portions of the transcript to call to the judge's attention because "a mere reading of the transcript will not allow the Court to familiarize itself sufficiently to discharge its legal responsibilities."

Even accepting the Defendant's contention that conflicting testimony at trial required credibility choices, we believe that Judge Fitzwater was capable of assessing the credibility of the witnesses and the evidence at trial by a thorough review of the record. Judge Fitzwater displayed a familiarity with the record at the sentencing hearing that reflects such a thorough review. We find that Judge Fitzwater adequately familiarized himself with the case prior to sentencing Defendant Crowe. *Compare United States v. Larios,* 640 F.2d 938 (9th Cir.1981). His decision to proceed with sentencing was therefore not an abuse of discretion.

After reviewing the record in this case, we find that the Defendants were treated fairly at trial and sentencing. Judge Porter took an active role in this case, but the record reflects impartiality toward the Defendants. Judge Fitzwater handled the Defendants' sentencing with care. For all of the foregoing reasons, we find that the Defendants' alleged grounds of error are without merit, and we AFFIRM the Defendants' convictions in the district court.