# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 29, 2012

No. 10-51174

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

LORENZO OLIVAS-PENA; PEDRO BALDOVINAS; LORENZO
DOMINGUEZ-SIANEZ; EDUARDO SORIANO-VELADOR; JUAN
ESCOBEDO-BALERO,

Defendants - Appellants

Appeals from the United States District Court
for the Western District of Texas
USDC No. 4:10-CR-2-10

Before KING, WIENER, and HAYNES, Circuit Judges.

PER CURIAM:[*]

A jury convicted Defendants-Appellants Lorenzo Olivas-Pena, Pedro Baldovinas, Lorenzo Dominguez-Sianez, Eduardo Soriano-Velador, and Juan Escobedo-Balero of conspiracy to cause a riot at a federal penal facility (Count 1); aiding and abetting others to cause a riot at a federal penal facility (Count 2); and aiding and abetting others to intentionally use fire to commit either Count

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-51174

1 or Count 2 (Count 3). On appeal, the defendants argue that there was insufficient evidence to support their convictions. For the following reasons, we AFFIRM the district court's judgments.

The charges against the defendants arose from a five-day inmate riot at Reeves County Detention Center ("RCDC")[1] in 2009. RCDC has three separate facilities—R I, R II, and R III. The inmates housed at R I and R II are exclusively illegal immigrants, and ninety-five percent of these inmates are citizens of Mexico. There are thirty-one states and one Federal District in the country of Mexico, and upon entering RCDC, the inmates align with their respective states. The inmates of each state elect a state representative, who has the final say for that state's inmates and controls that state's inmate population. This internal organization of inmates is not officially recognized by RCDC, but it exerts a tremendous influence over the inmate population.

The incident that precipitated the outbreak of the riot was the placement of an inmate, Ramon Garcia, in the Special Housing Unit ("SHU"). When RCDC officials refused to release Garcia from the SHU, inmates started rioting in R I and R II—damaging doors and windows, breaking out of their housing units, throwing items such as concrete at RCDC officers, and tearing holes in fences. Within several hours, the inmates had caused extensive damage to R I and R II. All of R I had been burned, and R II had been flooded due to the inmates' destruction of the fire sprinklers. Due to this severe damage to the housing units, the inmates began living outside in the recreation yards. Approximately five days after the outbreak of the riot, RCDC officials finally regained control, as the last group of inmates surrendered and returned to their housing units.

At trial, the government called a number of RCDC officers to testify. The jury convicted the defendants on all counts. Because the defendants preserved

---

[1] RCDC, located in Pecos, Texas, is a federal penal facility operated by a private corporation under the direction and regulation of the Bureau of Prisons.

## No. 10-51174

the issue of the sufficiency of the evidence, we review "whether, viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir. 2003) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and the jury is free to choose among reasonable constructions of the evidence." *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996) (citations omitted).

*1. Count 1*

On Count 1 of the indictment, the defendants were convicted of conspiracy to cause a riot at a federal penal facility, in violation of 18 U.S.C. §§ 371, 1792.[2] In order to obtain a conviction on this count, the government was required to prove that: (1) the defendant and at least one other person made an agreement to commit the crime of causing a riot at RCDC; (2) the defendant knew the unlawful purpose of the agreement and joined in it willfully; and (3) one of the conspirators committed an overt act in furtherance of the conspiracy.[3] *See United States v. Bourgeois*, 950 F.2d 980, 983 (5th Cir. 1992); *United States v. Robles-Pantoja*, 887 F.2d 1250, 1254 (5th Cir. 1989). We have stated that a "jury may infer a conspiracy agreement from circumstantial evidence . . . and may rely upon presence and association, along with other evidence, in finding that a conspiracy existed." *Robles-Pantoja*, 887 F.2d at 1254 (citations omitted).

---

[2] Section 1792 provides: "Whoever instigates, connives, willfully attempts to cause, assists, or conspires to cause any mutiny or riot, at any Federal penal, detention, or correctional facility, shall be imprisoned not more than ten years or fined under this title, or both." 18 U.S.C. § 1792.

[3] The indictment listed three overt acts in furtherance of the conspiracy: (1) breaking windows, doors, fences, and furniture at RCDC; (2) igniting fires at RCDC; and (3) throwing rocks and concrete at RCDC staff and spraying RCDC staff with fire hoses.

No. 10-51174

On appeal, the defendants argue that the government failed to prove that the defendants knowingly agreed to cause a riot at RCDC.[4] The following evidence against each defendant demonstrates that a rational jury could have inferred that each defendant knowingly and willfully joined in the conspiracy to cause a riot at RCDC.

### a. Escobedo-Balero

The government's evidence against Escobedo-Balero was substantial. Escobedo-Balero was the state representative of Chihuahua, the most populous Mexican state at RCDC, and therefore he had the most control over the inmate population. At trial, many RCDC officers testified that Escobedo-Balero was the leader of the inmate riot—from the very beginning to the very end. Before the outbreak of the riot, he attended every meeting with RCDC officials. At the meetings, he became angry and demanding, threatening the officials that, if they did not release Garcia from the SHU, he would not be responsible for what the inmate population would do. Also, just hours before the uprising, Escobedo-Balero met with a group of approximately twenty inmates. Additionally, after visiting Garcia in the SHU, Escobedo-Balero incited inmates to riot by yelling to them that there was going to be a disturbance. Furthermore, within seconds of his return to R I, chaos erupted among the inmates.

Throughout the duration of the riot, Escobedo-Balero continued to exert tremendous control over the inmates. For instance, he was heard numerous

---

[4] The defendants also argue on appeal that the government introduced no evidence that they committed any of the overt acts alleged in the indictment. However, the defendants' argument is misplaced, because the government was only required to prove that one of the conspirators, known or unknown, committed an overt act in furtherance of the conspiracy. *See Bourgeois*, 950 F.2d at 983. Substantial evidence introduced at trial indicated that the overt acts alleged in the indictment occurred and were committed by inmates. A rational jury could have found that the inmates who committed the overt acts were conspirators, as the evidence introduced at trial indicated that there was a preconceived plan to cause a riot at RCDC. Therefore, the third element of the conspiracy count—the overt act requirement—is satisfied for each defendant.

times on the radio giving orders to inmates.  Additionally, he was present during all of the negotiations with RCDC officials, and he would not allow RCDC officials to negotiate with other state representatives.  Escobedo-Balero and his "crew" of approximately twenty inmates were the last inmates to surrender to RCDC authorities.  Before the group went inside, Escobedo-Balero thanked his crew for their help, and the inmates played "We are the Champions" as they walked inside.  Escobedo-Balero was the last inmate to surrender.  From this overwhelming evidence, a jury could have rationally inferred that Escobedo-Balero was the main leader of the riot and entered into an agreement with other inmates to cause a riot at RCDC.

### b. *Baldovinas*

Baldovinas was the state representative of Michoacan, the state Garcia aligned with, which was an important fact given that Garcia's placement in the SHU sparked the inmate riot.  Baldovinas therefore had control over the Michoacan inmate population.  Like Escobedo-Balero, Baldovinas attended every meeting with RCDC officials before the riot.  Baldovinas became very angry and demanding at the meetings, and threatened the officers that, if Garcia was not released from the SHU, he would not be responsible for what would happen.  Furthermore, seconds after he and Escobedo-Balero returned to R I, the inmates began rioting.  From this evidence, a rational jury could have inferred that Baldovinas—a state representative who had the power to incite his population to riot—did indeed encourage the inmates to riot upon his return to R I.

Further bolstering the conclusion that Baldovinas and Escobedo-Balero's conspiracy convictions should be affirmed is the similar case of *United States v. Gonzalez-Alvidres*, 281 F. App'x 351 (5th Cir. 2008), where we upheld two inmates' convictions for conspiracy to cause a riot at a federal penal facility.  We reasoned that a reasonable jury could have inferred a conspiracy between the two defendants based on the following circumstantial evidence: the two inmates

were the "functional leaders" of the cell block, the inmates became angry and made threats to officers, and they whispered and made hand motions to each other. *Id.* at 352-53. Similarly, in the instant case, a rational jury could have inferred that Baldovinas and Escobedo-Balero played key roles in the conspiracy to cause the riot, given their status as state representatives, their threats to RCDC officers, and that the riot began within seconds after their return to R I.

### c. *Soriano-Velador*

Evidence introduced at trial indicated that Soriano-Velador had close ties to Escobedo-Balero. At one point during the riot, Soriano-Velador was seen wearing a disguise, which consisted of a face covering and a yellow "security staff" jacket, as he was monitoring inmate traffic between two housing units. Soriano-Velador was heard on the radio directing the movement of inmates and was seen moving firewood and food at the direction of Escobedo-Balero. Furthermore, Soriano-Velador acted as a bodyguard for Escobedo-Balero, staying close to him during his negotiations with RCDC officials. Soriano-Velador was also in Escobedo-Balero's last group of inmates to surrender to the authorities. The jury could have rationally inferred that Soriano-Velador played an important role in the conspiracy to cause a riot, given that he was in Escobedo-Balero's trusted group and that he controlled and directed the traffic of inmates.

### d. *Dominguez-Sianez*

The government's evidence showed that Dominguez-Sianez was a member of Escobedo-Balero's crew. Dominguez-Sianez performed tasks on the orders of Escobedo-Balero, such as picking up firewood and food and taking these items back to the inmates. Additionally, along with Soriano-Velador, Dominguez-Sianez acted as a bodyguard for Escobedo-Balero during his negotiations with RCDC officials. Dominguez-Sianez was in Escobedo-Balero's last group of inmates to surrender to RCDC authorities. Based on this evidence, particularly the evidence that showed that Dominguez-Sianez was a member of Escobedo-

Balero's crew, a rational jury could have found that Dominguez-Sianez knowingly joined in the conspiracy to cause a riot at RCDC.

### e. Olivas-Pena

The government's evidence demonstrated that Olivas-Pena was a member of Escobedo-Balero's crew. An RCDC officer testified that he saw Olivas-Pena and Escobedo-Balero having a meeting with twenty inmates shortly before the outbreak of the riot. Olivas-Pena was one of the inmates in charge of radio communications. RCDC officers testified that, during the riot, they heard his voice on the radio giving orders regarding the movement of inmates, food, and firewood. Olivas-Pena was in Escobedo-Balero's last group of inmates to surrender, along with Soriano-Velador and Dominguez-Sianez. From this evidence, a rational jury could have inferred that Olivas-Pena knowingly agreed to participate in the conspiracy to cause a riot at RCDC.

Based on the foregoing analysis, we affirm the defendants' convictions on Count 1.

### 2. Count 2

On Count 2 of the indictment, the defendants were convicted of aiding and abetting others to cause a riot at a federal penal facility, in violation of 18 U.S.C. §§ 2, 1792. In order to obtain a conviction on this count, the government was required to prove that: (1) the offense of causing a riot at a federal penal facility was committed by some person; (2) the defendant associated with the criminal venture; (3) the defendant purposefully participated in the criminal venture; and (4) the defendant sought by action to make that venture successful. *See United States v. Gulley*, 526 F.3d 809, 816 (5th Cir. 2008). "A defendant associates himself with a criminal venture when he shares in the criminal intent of the principal." *Id.* (citation omitted). A defendant participates in a criminal venture if "the defendant acted in some affirmative manner designed to aid the venture." *Id.* (citation and internal quotation marks omitted).

No. 10-51174

On appeal, the defendants argue that the government presented no evidence that demonstrated that the defendants associated with and participated in causing a riot.  However, we hold that the evidence that supported each defendant's conspiracy conviction, outlined above, also supports each defendant's conviction for aiding and abetting others to cause a riot at RCDC.  *See United States v. Singh*, 922 F.2d 1169, 1173 (5th Cir. 1991) ("Typically, the same evidence will support both a conspiracy and an aiding and abetting conviction.").  Thus, we affirm the defendants' convictions on Count 2.

### 3.  Count 3

On Count 3 of the indictment, the defendants were convicted of aiding and abetting others to knowingly use fire to commit the offense set forth in either Count 1 or Count 2, in violation of 18 U.S.C. §§ 2, 844(h).[5]  In order to obtain a conviction on Count 3, the government was required to prove beyond a reasonable doubt that: (1) the offense of using fire to commit a federal felony offense was committed by some person; (2) the defendant associated with the criminal venture; (3) the defendant purposefully participated in the criminal venture; and (4) the defendant sought by action to make that venture successful. *See Gulley*, 526 F.3d at 816.

On appeal, the defendants argue that the government did not present any evidence to show that the defendants used fire to cause a riot at RCDC. However, the defendants' argument is misplaced, because the government was only required to prove that *some person* used fire to commit the felony.  Here, the government's evidence clearly demonstrated that unknown inmates set fire to RCDC as part of the riot.

---

[5] Section 844(h) states that anyone who "uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States" shall "be sentenced to imprisonment for 10 years."  18 U.S.C. § 844(h).

The defendants also argue that the government did not present any evidence that the defendants instigated others to use fire. However, the government was not required to prove with direct evidence that the defendants encouraged others to use fire to commit the felony offense. *See Gonzalez-Alvidres*, 281 F. App'x at 352-53 (upholding a defendant's conviction under 18 U.S.C. § 844(h) based on circumstantial evidence). In the instant case, the government presented much circumstantial evidence (as discussed above) from which a rational jury could have inferred that the defendants associated with and participated in the criminal venture of using fire to cause a riot at RCDC.

The government introduced evidence at trial that indicated that the riot had been planned and coordinated in advance by the inmates. Before the start of the riot, the inmates held a group meeting and had retrieved pool balls and had made homemade armor. Also, the riot erupted among the inmates in R I and R II in a very short time span. A jury could have reasonably inferred that the fires, which were started as the riot erupted, were part of the inmates' preconceived plan. A rational jury could have found that Baldovinas and Escobedo-Balero encouraged the use of fire to cause a riot based on their status as leaders of the inmate population, the threats they made to RCDC officials, and the fact that chaos erupted and fires were started shortly after their return to R I. With regard to Soriano-Velador, Dominguez-Sianez, and Olivas-Pena, the government presented evidence that they were part of Escobedo-Balero's trusted crew and that Escobedo-Balero was the ultimate leader of the riot. A rational jury could have inferred that Soriano-Velador, Dominguez-Sianez, and Olivas-Pena played important roles in planning and causing the riot, including the aiding and abetting of others to use fire. Therefore, we affirm the defendants' convictions on Count 3.

Because the evidence was sufficient to support the jury's verdict, we AFFIRM the district court's judgments of conviction.