# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 24, 2021

Lyle W. Cayce
Clerk

No. 19-40524

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

RAVINDER REDDY GUDIPATI; HARSH JAGGI; NEERU JAGGI;
LUIS MONTES-PATINO; ADRIAN ARCINIEGA-HERNANDEZ,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:17-CR-560

Before KING, DENNIS, and HO, *Circuit Judges*.

PER CURIAM:*

A jury convicted Ravinder Reddy Gudipati, Harsh Jaggi, Neeru Jaggi, Luis Montes-Patino, and Adrian Arciniega-Hernandez of charges related to money laundering, including conspiracy.   All five defendants appealed,

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 19-40524

bringing a variety of challenges to their convictions and the district court's rulings. We affirm.

## I.

This appeal involves a conspiracy to launder illegal drug proceeds from the United States by turning them into legitimate commercial proceeds in Mexico using the Black Market Peso Exchange (BMPE). The BMPE is a trade-based money laundering scheme, which works by concealing the source of illegal money through what appear to be legitimate business transactions between American exporters and Mexican importers. A Mexican drug trafficking organization (DTO) sells drugs in the United States for dollars with the goal of bringing the value of those dollars to Mexico as "clean" pesos. To accomplish this, a DTO connects with Mexican importers through a "peso broker." The broker places an order for dollars with the DTO using pesos from the Mexican importers. Then, the broker directs couriers in the United States to pick up money from drug traffickers and deliver it to American exporters, who ship goods to the Mexican importers.

All five defendants played a role in the BMPE. Defendant Montes-Patino was a money courier who brought cash to Laredo, Texas to be laundered through American export businesses. He admitted that he knew the cash was from an unlawful source. Defendants Harsh and Neeru Jaggi owned El Reino, and defendant Gudipati owned NYSA Impex. Both stores received drug proceeds as payment for their perfumes, which they shipped to Mexican importers. Defendant Arciniega-Hernandez worked for Carlos Velasquez-Flores, who pleaded guilty to conspiracy to commit money laundering. Velasquez-Flores owned a shipping company, Velasquez Transportes, which packaged and transported drug proceeds. The government infiltrated the conspiracy using undercover officers, wiretaps, and an informant, Corina Blake, who recorded phone calls and transactions

with suspected members of the conspiracy. Consequently, the government was able to observe dozens of Bulk Currency Transactions (BCTs) involving Montes-Patino, Arciniega-Hernandez, Gudipati, and the Jaggis.

In 2018, a grand jury indicted, *inter alia*, Arciniega-Hernandez, Harsh Jaggi, Neeru Jaggi, Gudipati, and Montes-Patino for their roles in the money laundering scheme. All five defendants were charged with conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). Additionally, some of the defendants were charged with various substantive money laundering offenses, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (ii) and 18 U.S.C. § 1956(a)(3)(B) and (C).[1] The jury found Harsh Jaggi, Neeru Jaggi, Gudipati, and Montes-Patino guilty on all counts. The jury found Arciniega-Hernandez guilty on all counts except his additional count of money laundering. After the government's case-in-chief, Defendants moved for judgments of acquittal, which the district court denied. Defendants renewed their motions at the close of all the evidence. Again, the district court denied them.

## II.

There are five issues on appeal, each argued by a different defendant or group of defendants.

## A.

First, Arciniega-Hernandez, Harsh Jaggi, Neeru Jaggi, and Gudipati each challenge the sufficiency of the evidence to support their conspiracy and money laundering convictions. Because Defendants moved for judgments of acquittal before the district court, we review insufficiency-of-the-evidence

---

[1] Gudipati was also charged with three counts of causing a business to fail to file or file incorrect monetary transaction reports, in violation of 31 U.S.C. § 5324(b)(1) and (2). He was convicted on all three and does not challenge them on appeal.

claims de novo. *See United States v. Harris*, 666 F.3d 905, 907 (5th Cir. 2012). We "view the evidence in the light most favorable to the verdict and [will] uphold the verdict if, but only if, a rational juror could have found each element of the offense beyond a reasonable doubt." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999). Our "inquiry is limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *United States v. Scott*, 892 F.3d 791, 797 (5th Cir. 2018) (quoting *United States v. Alaniz*, 726 F.3d 586, 601 (5th Cir. 2013)).

Each defendant was charged with conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). The government had to show "(1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006).

Here, the government alleged conspiracy to commit both concealment and avoidance money laundering. For concealment, the government must prove that the transactions "had the purpose, not merely the effect, of 'making it more difficult for the government to trace and demonstrate the nature of the funds.'" *United States v. Valdez*, 726 F.3d 684, 690 (5th Cir. 2013) (alterations omitted) (quoting *United States v. Brown*, 553 F.3d 768, 787 (5th Cir. 2008)). For avoidance, the government must prove that the defendant was aware of certain reporting requirements and knew the transaction was designed to avoid those requirements. *See, e.g.*, *United States v. Bronzino*, 598 F.3d 276, 281 (6th Cir. 2010).

Additionally, Arciniega-Hernandez, the Jaggis, and Gudipati were each charged with a substantive money laundering offense under 18 U.S.C. § 1956(a)(1)(B). Arciniega-Hernandez was charged with an additional count of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

The government needed to prove that they actually conducted or attempted to conduct a financial transaction with proceeds of a specified unlawful activity with knowledge that its purpose was to conceal the source of the proceeds or avoid transaction reporting requirements. *United States v. Cessa*, 785 F.3d 165, 173–74 (5th Cir. 2015).

Finally, Harsh Jaggi and Gudipati were each charged with one substantive count of laundering money represented to be the proceeds of drug trafficking (sting money laundering), in violation of 18 U.S.C. § 1956(a)(3)(B) and (C).　The government needed to prove that they conducted or attempted to conduct "a financial transaction involving property represented to be the proceeds of specified unlawful activity" with the intent either "to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity" or to avoid a transaction reporting requirement. 18 U.S.C. § 1956(a)(3)(B) & (C).　*See also United States v. Castaneda-Cantu*, 20 F.3d 1325, 1330 (5th Cir. 1994).

After hearing oral argument and a careful review of the record, briefs, and applicable legal standards, we conclude that the evidence was sufficient to convict Arciniega-Hernandez, Harsh Jaggi, Neeru Jaggi, and Gudipati of all charges.　We briefly summarize the relevant evidence.

Arcinega-Hernandez received large sums of money in commercial parking lots; delivered large sums to others in bags; counted, separated, marked, and packaged money in various denominations; referred to the money using code names; and knew the amounts of money to be delivered and picked up and the identity of the people making the drops.　The Jaggis regularly received tens of thousands of dollars in cash, packaged in small denominations, and wrapped in rubber bands, and were told it was "narco money."　The Jaggis failed to report cash in amounts greater than $10,000

(in violation of federal law); denied knowing the courier, Blake; kept two sets of ledgers to underreport cash transactions; structured transactions to avoid reporting requirements; failed to report certain transactions; and concealed the identity of transaction participants.  Similarly, Gudipati regularly received tens of thousands of dollars in cash, packaged in small denominations, wrapped in rubber bands, and carried in plastic bags. Gudipati was told it was "narc money" and that the courier "was at risk with the police bringing this [money] like that."  Gudipati consistently failed to report cash deposits greater than $10,000; concealed that a courier was bringing in the cash deposits; and knew that his actions violated federal reporting requirements.  In light of this evidence, a rational juror could find all the elements of conspiracy to commit money laundering and substantive money laundering beyond a reasonable doubt.

**B.**

Second, Arciniega-Hernandez argues that the district court's jury instruction pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946), constructively amended his indictment.

Arciniega-Hernandez was charged with several counts of substantive money laundering.  Under *Pinkerton*, a member of a conspiracy may be convicted of any foreseeable substantive offense that a co-conspirator commits in furtherance of the conspiracy.  *See United States v. Sanjar*, 876 F.3d 725, 743 (5th Cir. 2017).  The proposed jury instructions did not include a *Pinkerton* instruction.  The government requested one, and defense counsel objected, arguing that the instruction was "not required" because there was evidence Arciniega-Hernandez "conducted a transaction."  Notably, defense counsel did not argue that a *Pinkerton* instruction would constructively amend the indictment.  The court noted that the instruction was necessary to uphold a defendant's conviction under an agency theory of

liability and gave the instruction. *United States v. Polk*, 56 F.3d 613, 619 n.4 (5th Cir. 1995) ("[A] substantive conviction cannot be upheld solely under *Pinkerton* unless the jury was given a *Pinkerton* instruction.").

We review a preserved claim of constructive amendment de novo. *See United States v. Jara-Favela*, 686 F.3d 289, 299 (5th Cir. 2012). Arciniega-Hernandez argues that de novo review applies because he "specifically objected" to the *Pinkerton* instruction. While he did object, he argued only that the instruction was "not required" because he "conducted a transaction." He did not specifically argue that the instruction would constructively amend the indictment, so he did not preserve that argument. We review unpreserved claims of constructive amendment for plain error, which first requires a defendant to identify an error. *See*, *e.g.*, *United States v. Chaker*, 820 F.3d 204, 213 (5th Cir. 2016).

Arciniega-Hernandez doesn't identify any error with the district court's *Pinkerton* ruling. Constructive amendment occurs when a court "permits the defendant to be convicted upon a factual basis that effectively modifies an essential element of the offense charged" or upon "a materially different theory or set of facts than that with which [he] was charged." *United States v. McMillan*, 600 F.3d 434, 451 (5th Cir. 2010). We reverse a conviction only if the difference between the indictment and the jury instructions "allows the defendant to be convicted of a separate crime from the one for which he was indicted." *United States v. Nuñez*, 180 F.3d 227, 231 (5th Cir. 1999). The "key inquiry is whether the jury charge *broadened* the indictment." *United States v. Griffin*, 800 F.3d 198, 202 (5th Cir. 2015).

Here, the instruction did not broaden the indictment. It merely permitted the jury to convict Arciniega-Hernandez of Counts Three, Four, and Five of the indictment if it found him guilty of the conspiracy charged in Count One of the indictment. *See United States v. Jimenez*, 509 F.3d 682, 692

(5th Cir. 2007) (explaining that when there is sufficient evidence to prove that a defendant was a knowing member of the conspiracy, "no additional evidence is necessary to warrant a conviction on a substantive count which charges him with an event which occurred while he was active as a member of the conspiracy"). Thus, Arciniega-Hernandez fails to demonstrate that the district court erred in giving the *Pinkerton* instruction. Accordingly, we need not consider the other prongs of plain error review.

## C.

Third, Gudipati argues that the district court improperly calculated the loss amount attributable to him at sentencing. The PSR states that the total loss amount caused by Gudipati's offense conduct is $262,900. The amount included the money from several BCTs and one other transaction as relevant conduct under U.S.S.G. § 1B1.3(a)(1). Consequently, the PSR increases Gudipati's offense level from 8 to 20. U.S.S.G. § 2B1.1(b)(1)(G). The PSR also reflects a six-level adjustment under U.S.S.G. § 2S1.1(b)(1) because Gudipati knew the money was from drug proceeds. Gudipati objected to the § 2S1.1(b)(1) adjustment before and during sentencing, arguing that he did not know the money was from unlawful activity until the final transaction.

We review a district court's determination of a loss amount for clear error. *See United States v. Peterson*, 101 F.3d 375, 384 (5th Cir. 1996). We also review a district court's factual determination of what constitutes relevant conduct for purposes of sentencing for clear error. *Id.*

Gudipati argues that, if we reverse on Count Three but affirm on Counts One and Six, we should remand the case for resentencing. Since we affirm Gudipati's conviction on Count Three, we do not need to address this conditional challenge to his sentence. In any event, the district court did not clearly err in calculating Gudipati's loss amount.

No. 19-40524

## D.

Fourth, Gudipati, Harsh Jaggi, and Neeru Jaggi argue that they were improperly sentenced before a district judge who did not preside over their trial. The court originally scheduled sentencing for Gudipati and the Jaggis before Judge Maria Garcia Marmolejo, who presided over the trial. Harsh's defense counsel moved to reschedule sentencing due to a conflict. Sentencing was rescheduled and was reassigned to Judge Micaela Alvarez. Later, Judge Marmolejo explained she was absent from the district and unable to preside over the sentencing.

Gudipati and the Jaggis moved to reconsider the reassignment, arguing that Judge Marmolejo was in the best position to consider the legal and factual arguments to be raised at sentencing given the complexity of the case. Judge Alvarez denied the motions. We review decisions to reassign a case for sentencing pursuant to Federal Rule of Criminal Procedure 25(b) for abuse of discretion. *See United States v. Bourgeois*, 950 F.2d 980, 988 (5th Cir. 1992).

Federal Rule of Criminal Procedure 25(b)(1) provides that "[a]fter a verdict or finding of guilty, any judge regularly sitting in or assigned to a court may complete the court's duties if the judge who presided at trial cannot perform those duties because of absence, death, sickness, or other disability." Because Judge Marmolejo was absent at sentencing, reassignment here complied with Rule 25(b)(1). *See United States v. Dowd*, 451 F.3d 1244, 1256 (11th Cir. 2006) ("Because [the trial judge] became absent at the time of sentencing, reassignment of the case to [another judge] was proper under Rule 25.").

We have held that it was not an abuse of discretion for a successor sentencing judge to sentence a defendant where the judge "displayed a familiarity with the record at the sentencing hearing that reflects such a

thorough review." *Bourgeois*, 950 F.2d at 988. The record shows that Judge Alvarez adequately familiarized herself with this case. Accordingly, the substitution of Judge Alvarez and her decision to proceed with sentencing was not an abuse of discretion.

## E.

Fifth, Montes-Patino argues the district court erred in sentencing him *in absentia*. Montes-Patino repeatedly failed to appear for sentencing and counsel could not contact him. The court delayed sentencing several times. The Marshals Service reported that Montes-Patino's family had not seen him since spring 2019 and did not know where he was. The Marshals Service concluded that he was in Mexico and did not intend to return to the United States. The government asked the court to sentence Montes-Patino *in absentia*, and the court agreed because Montes-Patino had been given the opportunity to show up, had no contact with his attorney, and was considered a fugitive.

We review a district court's factual finding that a defendant has voluntarily absented himself from sentencing for clear error. *See United States v. Ornelas*, 828 F.3d 1018, 1021 (9th Cir. 2016). We review a decision to sentence a defendant *in absentia* for abuse of discretion. *Id.*

Typically, a defendant's presence is required at sentencing. FED. R. CRIM. P. 43(a)(3). But a defendant in a noncapital case waives the right to be present "when the defendant is voluntarily absent during sentencing." FED. R. CRIM. P. 43(c)(1)(B). The advisory committee note to the 1995 amendments states that they "make clear that a defendant who, initially present at trial . . . but who voluntarily flees before sentencing, may nonetheless be sentenced in absentia." *Id.*, advisory comm. note (1995). Montes-Patino's argument depends on pre-1995 case law. Based on our review of the record, the district court did not clearly err in finding that

No. 19-40524

Montes-Patino was voluntarily absent.  Consequently, the district court did not abuse its discretion in sentencing Montes-Patino *in absentia*.  Rule 43 specifically allows it.

* * *

For the foregoing reasons, we affirm the convictions of all five defendants.