IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-915

Filed 17 September 2024

Cleveland County, Nos. 97CRS1876-80

STATE OF NORTH CAROLINA

v.

TRAVIS K. McCORD, AKA SHAWN LATTIMORE, Defendant.

Appeal by defendant from orders and judgments entered 3 March 2023 by Judge W. Todd Pomeroy in Cleveland County Superior Court. Heard in the Court of Appeals 13 August 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Heidi M. Williams, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Kathryn L. VandenBerg, for defendant-appellant.*

DILLON, Chief Judge.

In 1999, Defendant Travis K. McCord was sentenced to life without parole ("LWOP") for first-degree murder. As Defendant was only 16 years old at the time of the murder, Defendant was entitled to a resentencing hearing pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190 (2016). After the resentencing hearing, the court again sentenced Defendant to LWOP. We affirm.

## I.    Background

Defendant previously appealed his conviction in the early 2000s.[1]

Under the law applicable at the time of Defendant's trial, it was mandatory for the trial judge to sentence a defendant convicted of first-degree murder who was 16 years of age at the time of the murder to LWOP.  *See* N.C.G.S. § 14-17 (1997).

In 2012, the United States Supreme Court's decision in *Miller v. Alabama* held that *mandatory* LWOP sentences for defendants who were under 18 years of age at the time of the crime violate the United States Constitution's Eighth Amendment prohibition on cruel and unusual punishments.  567 U.S. at 465.  Four years later, in 2016, in the case of *Montgomery v. Louisiana*, the United States Supreme Court determined that *Miller* applies retroactively.  577 U.S. at 208−09.

In response to *Miller*, our General Assembly enacted N.C.G.S. § 15A-1340.19A, *et seq.* (2023) (the "*Miller* statute").  The *Miller* statute requires that the sentencing court conduct a hearing for every defendant convicted of first-degree murder[2] who was under 18 years old at the time of the offense to determine whether LWOP or a lesser sentence is appropriate.  N.C.G.S. § 15A-1340.19B(a)(2).

Defendant was granted a *Miller* resentencing hearing, which occurred in

---

[1] Defendant appealed his conviction in *State v. McCord*, 140 N.C. App. 634 (2000).  Our Court remanded the case for a *Batson* hearing but otherwise held no error.  *See id.*  On remand, the trial court found no *Batson* violation, and our Court affirmed.  *See State v. McCord*, 158 N.C. App. 693 (2003).

[2] Under the *Miller* statute, a first-degree murder conviction *based on the felony murder rule* carries a sentence of life imprisonment *with* parole rather than an LWOP sentence.  *See* N.C.G.S. § 15A-1340.19B(1).

January 2020.

Defendant also filed motions challenging the constitutionality of his sentence and the constitutionality of North Carolina's statutory scheme, the *Miller* statute.

In March 2023, the superior court convened a hearing and entered orders resentencing Defendant to LWOP and denying his constitutional challenges. Defendant appeals.

## II. Argument

Defendant makes essentially three arguments on appeal, which we address in turn.

## A. Credibility Determination

Defendant first argues that the resentencing judge, in making his sentencing determination, impermissibly assessed the credibility of witnesses who testified during the 1999 trial, where he was not the presiding judge at that trial. For instance, in his order, the resentencing judge made findings regarding Defendant's propensity to criminal behavior and the lead role Defendant played in the murder, based largely on the 1999 trial testimony of two of the three accomplices who had participated with Defendant in the killing:

> The testimony of Katina Lankford (hereinafter Lankford) and Amy Sigmon (hereinafter Sigmon) as set forth in the trial transcript was credible and generally consistent with the testimony of other witnesses in the trial as well as being consistent with physical evidence presented and analyzed for purposes of the trial. Based on consistency of the testimony with other evidence presented at the trial,

> the Court finds that their version of the events is factually true.

Indeed, the testimonies from the accomplices tended to show, not only that Defendant participated in the murder, but that he was the leader of the group. However, while it is clear the jury believed the evidence that Defendant participated in the murder (based on their guilty verdict), it is unknowable whether the jury believed that Defendant was the leader. But in determining an LWOP sentence to be appropriate, the resentencing judge found the testimony of two accomplices and other evidence—tending to show that Defendant was the leader and likely to reoffend—to be credible.

We conclude that the judge in a *Miller* resentencing hearing, rather than a jury, may make credibility findings regarding the evidence offered at the trial to support his sentencing decision. In so holding, we are persuaded by the following: The United States Supreme Court's holding in *Miller* states that "*a judge* or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible punishment for juveniles." 567 U.S. at 489 (emphasis added). *See also Raines v. State*, 845 S.E.2d 613 (Ga. 2020) (jury not required to make findings in *Miller* resentencing hearing); *State v. Keefe*, 478 P.3d 830 (Mont. 2021) (same); *People v. Skinner*, 917 N.W.2d 292 (Mich. 2018) (same).

Also, our *Miller* statute provides that "[t]he order adjudging the sentence shall include findings on the absence or presence of any mitigating factors and *such other findings as the court deems appropriate to include in the order*." N.C.G.S. § 15A-

1340.19C(a) (2023) (emphasis added).  Further, the *Miller* statute provides the matter may be heard by a judge other than the judge who presided at trial.  *See* N.C.G.S. § 15A-1340.19C(b) (2023).

Our General Assembly has provided that in *any* criminal jury trial, the presiding judge may be substituted with a new judge during the course of the trial prior to sentencing in certain circumstances.  *See* N.C.G.S. § 15A-1224 (2023).  After this substitution, the new judge may be required, and is allowed, to make credibility findings about witnesses who testified even prior to the substitution in considering the appropriate sentence within the presumptive range.

Similarly in federal court, the Federal Rules of Criminal Procedure allow for the substitution of a new judge during the sentencing phase in certain circumstances. *See* Fed. R. Crim. P. 25(b)(1).  The sentencing judge is allowed to make credibility findings about witnesses who testified in front of the other judge during the guilt determination phase of the trial in order to appropriately sentence the defendant. For example, in *United States v. Bourgeois*, 950 F.2d 980 (5th Cir. 1992), the trial judge became disabled after the trial, so the case was transferred to another judge for sentencing.  *Id.* at 987.  The defendant requested that the substituting judge recuse himself or grant the defendant a new trial because the substituting judge would not be able to assess the credibility of the witnesses who testified at trial in front of the preceding judge.  *Id.*  The Fifth Circuit rejected the defendant's argument, concluding that the substituting judge "was capable of assessing the credibility of the witnesses

and the evidence at trial by a thorough review of the record." *Id.  See also United States v. Casas*, 425 F.3d 23, 56 (1st Cir. 2005); *United States v. McGuinness*, 769 F.2d 695, 696 (11th Cir. 1985) (stating "[a] sentencing judge enjoys broad discretion to determine whether he can perform sentencing duties in a case he did not try.").

Here, the judge who presided over Defendant's *Miller* resentencing stated that he "considered everything presented to it" in determining Defendant's sentence, which includes evidence such as the 1999 trial transcript and Defendant's 1997 confession following his arrest for the murder.  We are satisfied that the judge thoroughly reviewed the record and could appropriately assess the credibility of the two co-defendants who testified against Defendant at the 1999 trial.

## B. Mitigating Factors

Defendant argues that the trial court ignored mitigating evidence and misapplied some of *Miller*'s mitigating factors.  We review orders weighing the *Miller* factors only for abuse of discretion.  *State v. Golphin*, 292 N.C. App. 316, 322 (2024).  "Abuse of discretion results where the trial court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *Id.*

Pursuant to the *Miller* statute, the defendant may submit mitigating circumstances for the court to consider in determining whether to impose an LWOP sentence.  N.C.G.S. § 15A-1340.19B(c)(1)–(9).

### 1.  Contested Mitigating Factors

Defendant specifically contests the court's weighing of the following factors: (1) age, (2) immaturity, (3) reduced ability to appreciate risks and consequences, (4) family and peer pressure exerted upon the defendant, and (5) the defendant's likelihood to benefit from rehabilitation.

### a. *Defendant's age*

Defendant was 16 years, 7 months, and 15 days old at the time of the murder. The resentencing court found that "Defendant [was] substantially closer to the age of a criminal adult." Nonetheless, the court noted that "[t]he chronological age and the youth of the Defendant is a mitigating factor to which the court gave substantial weight." We conclude the court did not abuse its discretion in its consideration of this mitigating factor.

### b. *Immaturity*

The resentencing court did not give significant weight to the factor of immaturity. The court found that, being less than 18 years old, Defendant lacked "some degree of maturity" but there was "no evidence of any specific immaturity that mitigates Defendant's conduct in this case." For example, the forensic psychiatry expert testified that immaturity can manifest itself in impetuous and impulsive acts, and the court noted that Defendant did not "act impetuously or impulsively[,]" as the plans for committing the robbery (which escalated into murder) were modified multiple times and Defendant was involved in at least two of those plan modifications. Accordingly, we conclude the court did not abuse its discretion in its

consideration of this mitigating factor.

### c.  *Ability to appreciate risks and consequences*

The court found that Defendant's ability to appreciate risks and consequences as a mitigating factor was "not existent and does not apply."  Specifically, the court noted that a person of Defendant's age with no intellectual or mental health disabilities would know the consequences of armed robbery, rape, kidnapping, and murder.  The court further noted:  Defendant deliberately minimized the chance of being held responsible for the murder by moving the victim from the motel (a public place) to a remote place; Defendant killed the victim to eliminate her as a potential witness; Defendant forced his co-defendants to participate in the execution-style murder so they would be less likely to testify against him; and Defendant had condoms (and let a co-defendant borrow a condom to rape the victim), but he chose not to use a condom while he raped the victim because he planned to kill her and knew pregnancy would not be an issue.  We conclude the court did not abuse its discretion in its consideration of this mitigating factor.

### d.  *Familial or peer pressure*

The court found that familial or peer pressure was not a mitigating factor in this case.  For example, the court noted that

> [a]lthough Defendant was brought into the crime by the other participants, once the plan to rob the victim was initiated, the Defendant became a leader in its execution. At the time of the murder, it was the Defendant who not only pressured the others to participate in the murder but

> he actually forced the other participants to shoot the victim
> to kill he[r] under the duress of being told if they did not
> shoot the victim, he would kill them.

And though the court did not assign mitigating value to Defendant's dysfunctional childhood here, the court explicitly found his dysfunctional childhood to be a mitigating factor later in its Order under the category of "any other mitigating factor or circumstance." We conclude the court did not abuse its discretion in its consideration of this mitigating factor.

### e. *Likelihood to benefit from rehabilitation in confinement*

The resentencing court found the likelihood that Defendant would benefit from rehabilitation in confinement was not a mitigating factor. The court noted that it had the benefit of evaluating Defendant's behavior while serving his sentence over the last two decades. Specifically, Defendant has had multiple disciplinary infractions, he was convicted of simple assault in 2003 and assault of a government official in 2013, and he is a high-ranking member of the Blood Nation gang. We conclude the court did not abuse its discretion in its consideration of this mitigating factor.

### C. Constitutional Arguments

Defendant argues that North Carolina's *Miller* statute is unconstitutional on its face because it contains a presumption in favor of LWOP and its framework does not provide adequate guidance for sentencing courts.[3] Our Supreme Court, however,

---

[3] Defendant asserts this argument to preserve it for reconsideration by our Supreme Court and for possible future federal review.

has sustained the constitutionality of our State's *Miller* statute. *See State v. James*, 371 N.C. 77, 99 (2018). We conclude the statute is not unconstitutional on its face.

Defendant also argues that an LWOP sentence for juvenile offenders is unconstitutional under both the Eighth Amendment of the United States Constitution and Article 1, Section 27 of the North Carolina Constitution. He specifically argues an LWOP sentence should never be imposed because it is impossible to determine how a human being may change in the future (*i.e.*, impossible to determine if a human being is irreparably corrupt). Defendant's argument is without merit, as our Supreme Court has recognized that LWOP sentences are constitutional (under both the federal and state constitutions) for a juvenile deemed to be irreparably corrupt. *See State v. Conner*, 381 N.C. 643, 659−69 (2022); *State v. Kelliher*, 381 N.C. 558, 560 (2022).

AFFIRMED.

Judges WOOD and THOMPSON concur.